THE PEOPLE, EX. REL. PETER CAGGER, v. THOMAS DOLAN, AND OTHERS, ASSESSORS OF THE CITY OF ALBANY..

*Assessment on Bank Stock—No reduction for Debts—Laws 1866, ch. 761.*

A shareholder in a banking association who has been assessed upon the value of his shares therein under the Act of 1866 (Ch. 761), is not entitled at the hands of the assessor to a reduction of such valuation on account of his debts.

THIS is an appeal from an order of the General Term of the Third District, commanding the Appellants as assessors of the city of Albany, to reduce the assessment against the relator to the sum of one dollar, in accordance with the request contained in his affidavit. The facts are stated in the opinion of the Court.

*A. J. Parker* for the Appellants.
*Samuel Hand* for the Respondents.

HUNT, J.—The relator resides in the Sixth Ward of the city of Albany. The National Commercial Bank, in which he owns eleven hundred and four shares of stock of the value of $20 each, is located in the Fourth Ward of the same city. Under the Act of the legislature of this State, passed April 23, 1866, the relator was assessed $22,800 as the par valuation of his bank shares. The Defendants are the board of assessors of the city of Albany.

On the 24th of September, 1866, the relator presented to the said Defendants an affidavit, in which he stated "that the value of the personal estate owned by him does not exceed the sum of one dollar, after deducting his just debts and his property invested in the stocks of corporations, liable to be taxed therefor," and claimed that his assessment should be reduced in accordance therewith.

The Defendants refused to reduce the assessment, and the relator moved at Special Term for a mandamus directing them to make such deduction. This motion was granted, and upon appeal by the Defendants to the General Term of the Third District, the order was affirmed. The Defendants now bring their appeal to this Court.

The Respondents claim that the assessment and taxation upon bank shares, authorized by the Act of April 23, 1866, stand upon the same basis as all other taxation of personal property, under the laws of this State; that the relator was entitled to deduct from such assessment his personal indebtedness, and that he was subject to taxation upon the balance only.   The Appellants claim that there was intended to be established a distinct system of taxation in reference to shares of bank stock, by which they were to be assessed and taxed upon their actual value, independent of the condition or circumstances of the owner.

By the general tax law of the State each individual is assessable in the town or ward in which he resides, and not elsewhere, for all personal estate owned by him.   The assessors of each town, between the first days of May and July, are required to ascertain by diligent inquiry the names of the taxable inhabitants, and the taxable property, real or personal, in their respective towns.   In the fourth column of the assessment roll, to be prepared by them, it is directed that the assessors shall set down " the full value of all the taxable personal property owned by each person, after deducting the just debts owing by him" (1 R. S., 1st Ed., 391).   It is the duty of the assessors to meet at a time appointed to hear complaints, and make corrections of their rolls.   It was at the time thus appointed that the relator made the affidavit before set forth, and it is conceded that, in regard to taxation for personal property generally, it was sufficient to entitle him to the deduction claimed.

The legislation upon the subject of the taxation of banks has been heretofore regulated upon a plan by itself, and a reference to this system will aid us in reaching a correct conclusion upon the question before us.   The general system of legislation upon the subject-matter of a statute may be taken into view, to aid the construction of a particular statute relating to the same subject. (Holbrook *v.* Holbrook, 1 Pick. 248, 254; Mendon *v.* County of Worcester, 10 Pick. 241.)

The first statute of which I am aware that imposed a tax upon bank stock as such, was that of 1823 (Sess. Laws, 1823, p. 390), which enacted " that all goods, chattels, bonds, . . . bank stock, . . .

shall be subject to taxation under the meaning of this act." By section fourteen the officers were required to deliver to the assessors a statement of their real estate, and the amount of their capital stock paid in or secured to be paid in, and the assessors were directed to insert in the roll " the amount of such real and personal property." It was further provided, that it should be the duty of the cashier or treasurer to pay the amount of such tax, " and to deduct the same from the dividends of the stockholders, in proportion to the stock held by them respectively, except the stock held by the State, or by literary or charitable institutions, from which no deductions shall be made" (§ 15). The companies were further authorized to commute for such taxes, by the payment of ten per cent. upon the amount of their dividends or income. The imposition of this tax was made upon the recommendation of the then Comptroller of the State, and was the subject of complaint on the part of the banks. It continued, however, to be the law of the State until the adoption of the Revised Statutes.

By the Revised Statutes of 1828 it was provided that " all moneyed or stock corporations, deriving an income or profit from their capital or otherwise," should be liable to taxation on their capital (1 R. S., 1st Ed., 414). The assessment of such corporations was made, 1, upon the real estate owned by them, if any ; and 2, upon the capital stock actually paid in and secured to be paid in, excepting therefrom the sums paid for real estate, and the amount of such capital stock held by the State, and by any incorporated literary or charitable institutions. The Safety Fund Banking System, which came into operation in the year 1829, required that the capital of all banks should be fully paid in. At this time, then, banks as such were taxable upon the amount of their capital stock paid in, with the two exceptions stated, to wit, of stock held by the State, and by literary or charitable institutions. It was thus taxable whatever might be the diminished value of its shares, unless it was able to show that it was not in the receipt of any income or profit whatever (Ib. 416). So, on the other hand, it was subject to no greater taxation, however valuable its shares might

become. (Bank of Utica *v.* The City of Utica, 4 Paige, 399.) Its nominal capital was the standard of taxation, although its shares might be reduced below that value, or might be greatly above it.

By the act of Dec. 7, 1847 (4 R. S., Edm. Ed., 151), it was enacted that all individual bankers and all banking associations "shall be subject to taxation on the full amount of actual capital paid in or secured to be paid in, as such capital, by them severally, at the actual market value of such securities, to be estimated by the Comptroller, without any reduction for the debts of such individual banker or banking association."

It was also enacted that taxes upon incorporated companies should be demanded from the president of the company, and that the same should "be paid out of the funds of the company, and be ratably deducted from the dividends of those stockholders whose stock was taxed, or shall be charged upon such stock if no dividends be afterward declared" (1 R. S., Edm. Ed., 377, § 18.)

In the year 1853 the system was amended by providing that the assessment upon incorporated companies should be upon their real estate, upon the amount of their capital stock paid in or secured to be paid in, together with the amount of all surplus or reserved funds exceeding ten per cent. of their capital, but deducting, as before, the amount of said stock that should be held by the State, or by any literary or charitable institution (1 R. S., Edm. Ed., 375).

And again, in the year 1857 (Sess. Laws, 1857, 2d vol., p. 1), the legislature enacted that this assessment, with the exceptions aforesaid, should be upon the capital stock, together with its surplus profits exceeding ten per cent., "at its actual value," thus substituting the principle of ascertaining the value of the stock to be assessed, instead of taxing upon its nominal amount.

The law continued in this form without alteration, with the exception of the invalid law of 1864, hereafter noticed, until the year 1865. The National Bank system had then become established, and the State Banks were rapidly organizing themselves under that authority. The legislature in that year passed an act (Laws 1865, ch. 97, p. 172) providing for such transfers, legalizing

and facilitating them. In section ten of the act, they enacted that all the shares in any of the said banking associations, held by any person or body corporate, should be included in the valuation of the personal property of such person or body corporate in the assessment of taxes in the town or ward where such banking association is located, and not elsewhere. This act having been declared by the Supreme Court of the United States to be illegal on a ground not here material, another act was passed by the legislature of New York on the 23d day of April, 1866, Laws 1866, p. 1647, being the act under which the present question arises. By the first section of this act it is provided that hereafter, no tax shall be assessed upon the capital of any bank . . but the stockholders in such bank shall be assessed and taxed on the value of their shares of stock therein. The assessment is to be made in the place where the bank is located, and not elsewhere, and the proportionate value of the real estate of the bank is to be deducted from the stock of each shareholder.

We thus see that, for a period of nearly fifty years, the policy of the legislature in regard to the taxation of bank capital and bank shares has been uniform. The stock has been taxed at its nominal value, without deduction for debts or charge for surplus, or as more recently at its actual value. We see that as to individual bankers, it was expressly enacted that the capital employed by them should be taxed at the market value of their securities employed, and without deduction for their individual debts. We see, again, that the taxation of the capital was considered as the taxation of the shares, when the legislature enact that such taxes shall be deducted from the dividends of the shareholders, or be charged against dividends subsequently to be made. In all of these statutes the assessment and taxation was based upon the value of the stock of the incorporation. The debts and credits and actual funds of the bank established the subject of taxation, and the condition or circumstances of the individual owning the shares did not enter into the account. We come then to the inquiry whether, under the acts of 1865 and 1866, the same system is carried out, and the shares are to be assessed and taxed at their value;

without regard to the condition of the owner, or whether that system was then abandoned.

It will be borne in mind that the present question is upon the intention of the legislature, and not upon its power. The power of the legislature to say that the taxation shall be enforced, without regard to the circumstances of the owner, is not disputed. Prior to the organization of the National banking system, the State banks paying taxes upon their capital to the State and to the municipal authorities possessed an aggregate capital of more than a hundred millions of dollars. Nearly all of these banks have transferred themselves to the United States organization. The State possesses the same power of taxation upon the shareholders (with certain qualifications not here important to be noticed) that it formerly had upon the banks; it has exercised this power, has preserved the forms and manner of bank taxation, so far as they were appropriate, and has given no evidence of any intention to abandon the large field of taxation so long used by it, or to embarrass and reduce it by allowing the circumstances of the shareholders to form an element in the case. The statute, on the other hand, apparently intends to preserve as fully as possible all the connections before existing on this subject. It says that " no tax shall hereafter be assessed upon the capital of any bank, or banking association, organized under the authority of this State or of the United States; but the stockholders in such banks and banking associations shall be assessed and taxed on the value of their shares of stock therein." It is quite unusual for the legislature to enact what they do not intend to tax, or what they do not intend to do in any respect. The preliminary statement, as here embodied, shows that the legislature wished to preserve the connection and the identity, as far as possible, between these two subjects of taxation. It is as if they had said, We cannot now tax the National banks, as we have been accustomed to do, but instead thereof we will tax their shareholders, and apply to them the system of taxation that we have heretofore imposed upon the banks, so far as it is lawful to do so. If such had not been their intention, it would have been very easy to have said that shares in banks shall

be taxed like other personal property, in the same manner and subject to the same rules. On the contrary, they adopt a special system of taxation for these shares, in close resemblance to the mode of taxing bank capital, and declare that such shareholders shall be " assessed and taxed on the value of their shares." In the general statute which I have before quoted the assessors are directed to assess to the person named " the full value of all the taxable personal property owned by such person, after deducting the just debts owing by him" (1 R. S., 1st Ed., 391). Upon the balance the tax is to be imposed. Under the present statute no such deduction is referred to; but the person is to be " assessed," not only, but " taxed on the value of his shares of stock therein." The difference is significant; the direction to the assessors to deduct from the value of the shares of each person a proportionate sum for the real estate owned by the corporation is significant also. It is so not only upon the principle of *expressio unius*, but as indicating the design of the framers of the statute. No such direction is contained in the general tax law, but real estate is there assessed and taxed in one column, and the residue of personal estate, after deducting debts, in another. By the statute of the United States, the real estate owned by a bank is taxable under the State authority directly against the bank, and the revenue on that subject of taxation is obtained as formerly. When the assessment is made upon the shares, the proportionate value of the real estate is deducted, and the State thus obtains from the bank and the shareholder together, as it did before from the bank alone, a tax upon the full value of both its real and its personal estate.

There are still other provisions of this statute which are evidence of the legislative intention to arrange a system of taxation of this kind of property which should be separate from the general system. Thus, by section 5, an action is given to the County Treasurer " to collect the tax from the avails of the sale of his shares of stock, and the tax on the share or shares of said stock shall be and remain a lien thereon, till the payment of said tax." No such provision for sale of choses in action is declared by the general tax law, and no such lien is declared in any other part of the tax law

of this State upon the property assessed. The sixth section also contains the unusual provision, that it shall be the duty of the bank to retain so much of the dividends belonging to such stockholders as shall be necessary to pay the taxes assessed in pursuance of this act. No such provision was ever before introduced into the tax law of this State, or now exists under the general system. These unusual provisions and directions concur with the previous legislation in indicating the statutory intent to establish for bank shares a system of taxation peculiar to itself, and independent of the general system of taxation in existence in the State. The act of April, 1863, ch. 240, is also strongly indicative of the same intention. By that act the legislature evidently intended to tax the whole available interest in the bank or in its shares. They there provided that a tax should be laid upon " a valuation equal to the amount of their capital stock paid in," and the surplus earnings, less ten per cent., without any deduction. This act was declared void by the Supreme Court of the United States, as laying a tax on the property of the bank, which property, in the whole or in part, consisted of stocks of the Federal Government. Immediately after this act was declared invalid, the acts of 1865 and 1866, already cited, were passed by the legislature.

It is argued in behalf of the Respondents that, inasmuch as the statute directs the assessment of the bank shares to be included in " the valuation of the personal property of such stockholders," it subjects it to the operation of the general law in regard to assessments. It is to be observed, however, that this valuation is directed to be thus made in the ward where the bank is located, and not elsewhere, whether the stockholder reside in said ward or not. It was the case with this relator, as it must be with many others, that he did not reside in the ward where the bank was located. It thus by its terms becomes at once distinguished from the general tax law, which requires this valuation to be made in all cases at the residence of the stockholder; and thus indication is given that this valuation was intended to be a part of the special system which I have already discussed. I have endeavored to show that such was the intention, and this provision is not in conflict

with that idea, but forms a consonant portion of the machinery to accomplish it.

It is said that the expression " but not at a greater rate than is assessed upon other moneyed capital in the hands of individuals in this State," aids the argument of the Respondent. It is argued that an individual owning a bond and mortgage for $1,000, and being indebted $500, could by the general law claim to have the $500 deducted from the value of his bond and mortgage, and that his assessment and taxation should be upon the remaining $500 only ; and that the refusal of a like deduction in favor of the shareholder of $1,000, would subject him to taxation upon twice as large an amount as was imposed upon the individual. This, it is said, would be imposing a greater rate of taxation upon the shareholder. The " rate" or ratio is the percentage merely, the "proportion," the " degree" (*Webster*, *Worcester*). If the State imposes a tax of five mills upon the dollar on all the real personal property of the State, five mills on the dollar is the " rate," the degree, the proportion, the percentage of taxation. This is distinct from the question of exemption. Almshouses and institutions of learning, and the estates of clergymen to a limited extent, are exempt from taxation. This exemption may compel the payment of a larger amount by the remaining taxpayers in an indirect manner, for the reason that so large a sum does not come into the Treasury of the State as if there were no exemptions. If so, it is not because the rate is altered, but because there is less material upon which the tax may attach itself. Rate and exemption are in no way connected. In their nature they have no necessary relation to each other. The one directs how much shall be raised upon certain valuations, while the other directs what property shall be subject to taxation, and what shall be exempt. The Statute of 1865 was declared invalid, for the reason that it did not contain the limitation now under discussion. The act of Congress authorized the taxation of shares of bank stock, but required that such tax should not exceed the rate imposed upon the shares of stock in banks authorized by State laws. The act of 1866 supplies this omission. To illustrate further the

rate and exemption, the possession of United States securities by a State bank exempts so much of its capital as is thus invested from State taxation, but the possession by a National bank of the like securities does not relieve its shareholders to the like amount. Both of these propositions were decided by this Court in The City of Utica v. Churchill (33 N. Y. 161); and Van Allen v. The Assessors (3 Wallace, 573), before cited; 2 Wallace, 200, Bank tax case; 2 Black 620. The same question was decided by this Court in October last, in The People, ex. rel. Kennedy, v. The Commissioners of Taxes, &c. The fact, therefore, that the same percentage will not produce the same amount of tax when imposed upon a State bank with a capital of $1,000,000, that it does when imposed upon National shareholders to that amount, does not affect the legality of the tax, and, as a corollary, does not impose a different rate of taxation. If it imposed a different rate the tax would be invalid.

The case of The People, ex. rel. Kennedy, v. The Commissioners of Taxes, &c., I understand to be decisive against the argument now under consideration. See opinion of Davies, Ch.J., pp. 15, 19, 20. (35 N. Y. 423).

In Van Allen v. The Assessors (supra), the Supreme Court of the United States says: "Upon the whole, after the maturest consideration which we have been able to give to this case, we are satisfied that the States possess the power to tax the whole of the interest of the shareholder in the shares held by him in these associations, within the limit prescribed by the act authorizing their organization." This proposition was announced in denial of a claim, that the interest of shareholders should be subject to taxation so far only as the capital of the bank was not invested in United States securities, exempt by law from taxation. I think it is correct in its application to the present case. The assessors did right in refusing to make the deduction claimed, and the order appealed from should be reversed with costs.

All the Judges concurred in the foregoing opinion, except Judges PORTER and BOCKES, who dissented.

PARKER, J.—The question presented in this case is, whether a shareholder in a bank or banking association, who has been assessed upon the value of his shares therein pursuant to the act of 1866 (Sess. Laws, 1866, chap. 761), is entitled, at the hands of the assessors, to a reduction of such valuation on account of his debts.

Upon a careful examination of the statute above referred to, in connection with the other statutes of the State on the subject of taxation, I do not think it contemplates the allowance of any such reduction.

The act itself shows that it was intended as a *substitute* for the then existing mode of assessing and taxing that portion of the property of the State invested in the capital of these moneyed corporations.

It begins as follows : " No tax shall hereafter be assessed upon the capital of any bank or banking association organized under the authority of this State, or of the United States, but the stockholders in such banks and banking associations shall be assessed and taxed on the value of their shares of stock therein ; said shares shall be included in the valuation of the personal property of such stockholder in the assessment of taxes at the place, town, or ward where such bank or banking association is located, and not elsewhere, whether the said stockholder reside in said place, town, or ward, or not ; but not at a greater rate than is assessed upon other moneyed capital in the hands of individuals in this State."

The reason of this substitution, as no one can doubt, is to be found in the fact that, because of the investment of almost the entire banking capital in the State in the bonds and other securities of the United States, this large amount of personal property was escaping taxation (the banks not being taxable upon that portion of their capital so invested), and that by assessing and taxing the shares of stock in the hands of the stockholders (which are taxable), the entire amount might be reached and made to bear its proportional part of the burdens of State taxation.

To regard the act as intended merely to render taxable, against individuals, a species of property never before taxed, and to leave

it to be treated, in reference to taxation, like all other taxable personal property, without any reference to the incidents and limitations which affected the taxation of corporations upon their capital, as the Respondent's counsel insists it should be regarded, seems scarcely a correct view to take of it. Such was not, I think, the scope and object of the statute, but, as already intimated, to secure to taxation the entire amount lost by the withdrawal of the capital of the banks therefrom. This is manifested, not only by the history of recent legislation and judicial decision on the subject of bank taxation, but by the provisions of the statute itself. The making of the stock taxable at the place where the bank is located, and requiring the bank to pay the tax from the dividends of the stockholder, if not paid by him, is a strong indication of the object above assigned.

The bank had not the right to reduce the valuation upon which it was taxable, on account of its indebtedness; and there is nothing in the statute under consideration expressly giving the stockholder such right. Reasoning from the plain object of the act, as being, not to reduce the amount of property subject to taxation, but to produce the same amount of taxation in a different way, the inference is that no such right was intended to be given.

It is insisted, however, that the right is, in effect, given by the provision that the "shares shall be *included* in the valuation of the personal property of such stockholder in the assessment of taxes," understanding it as a direction to add the value of the shares of stock to the value of all the taxable personal property owned by the stockholder, and then from the aggregate to deduct his debts, as required by the general statute in regard to the assessment of personal property (1 R. S. 391, § 9, sub. 4, 1st ed.).

This general statute provides (and the special statute for the city of Albany is the same) that the assessors in preparing their assessment roll shall set down, in the fourth column thereof, "the full value of all the taxable personal property owned by such person, *after deducting the just debts* owing by him." What, then, is "the

9

valuation of the personal property of such stockholder in the assessment of taxes," in which the shares are to be included? Not the value of all his taxable personal property *before* the deduction of his debts, but the residue which shall remain after such deduction : "the full value after deducting the just debts." The assessment of the personal property mentioned is necessarily independent of that of the bank shares, for the valuation of the personal property in which they are to be included is not arrived at until after debts are deducted ; until all deductions on account of debts have been made, there is to be no including of bank shares in the amount. So that, even if we are to understand by the words, "shall be included in," an adding and aggregating of amounts into one, I do not see any opportunity for deducting debts from the value of the shares of stock, the assessment of which is provided for in this act.

But that provision of the act, it seems to me, was intended merely to indicate that the assessors, in making up their assessment roll, should place the value of the shares in the column in which personal property is placed, so that it shall, in the assessment roll, comprise a part of the personal property there reported ; not aggregated with the personal property of the stockholder, but separately placed, so as to show its separate amount, and ultimately, when the fifth column comes to be supplied by the supervisors, the amount of tax with which it is separately chargeable. In such way it is embraced or "included" in the valuation of the stockholder's personal property in the assessment of taxes.

It is true there is no specific direction to keep the amount separate in the roll, and yet it is impossible to carry out the other provisions of the law unless that is done ; and there is no reason to be drawn from the act, or the other acts relative to assessments against it.

The meaning of the term "included in," insisted upon by the Respondent, cannot be literally followed, for these shares are to be assessed in the place, town, or ward where the bank or banking association is located, without reference to the residence of the stockholder. Unless he resides at the place where the bank is

located, he will have no valuation of personal property there to which they can be added; the language must mean that they shall be comprised in the valuation of personal property upon the roll, and assessed to the stockholder, though not a resident.

Again, by the 6th section of the act it is made the duty of the bank to retain, from the dividends of the stockholders, so much as may be necessary to pay the taxes assessed upon his stock pursuant to the act. It is necessary to the performance of this duty that it shall appear what tax has been assessed, distinctively, upon the stock; and hence the necessity of a separate statement of its value by the assessors, and a separate carrying out of the tax by the supervisors. The incongruity of the right claimed with this provision is manifest. If, when the stockholder resides at the place where the bank is located, the stock is to be mixed with his other taxable property, and then his debts deducted, how can it be ascertained what tax remains unpaid upon his stock, so that the bank can pay it, and deduct it from his dividend? If, in the ward where the bank is located, and in which the stockholder does not reside, as in the present case, he has stock assessed, for example, at $5,000, while in his own ward his personal property is assessed at $5,000, and he comes before the assessors, and shows that he is entitled to a deduction for debts to the amount of $7,000, so that the value of the personal estate owned by him, including his stock, after deducting his debts, &c., does not exceed $3,000—which assessment is to stand? at which place is he to be taxed upon this amount? The want of any provision on the subject, so plainly necessary if the right claimed exists, indicates a want of intention to recognize and allow it.

The words used in the act to impose the tax are, "but stockholders in such banks and banking associations shall be assessed and *taxed* on the *value* of their shares of stock therein." This language is not consistent with the claim of the Respondent, that they shall be taxed on the value after deducting debts.

The general statute (1 R. S. 389, § 5, 1st ed.) provides that "every person shall be assessed in the town or ward where he resides when the assessment is made, for all *personal estate*·

owned by him." "Assessed for all personal estate owned by him," is by subdivision 4, of § 9, construed to mean all his "taxable personal property, after deducting the just debts owing by him;" that is, the net personal estate, *what a man is worth*, exclusive of his lands and other property not taxable, is what the general law intends to tax him upon as personal property. The different language used in the act under consideration, is significant of a different intent in regard to this specific kind of property : "shall be assessed and taxed on the value" devotes the whole value to taxation, without reduction for debts, as has ever been the policy of the State in reference to the property which this is made to represent, and in perfect accordance with what we have seen to have been the object of the statute.

The view above taken does not at all conflict with the provision in the act, that the shares shall not be assessed " at a greater rate than is assessed upon other moneyed capital, in the hands of individuals in this State." This clause in the act is adopted from the 41st section of the Act of Congress, passed June 3, 1864, known as the National Currency Act, and inserted for the purpose of conforming the taxation directed by this, to the requirements of that act. The clause in that act has just received a construction in the Supreme Court of the United States, in the case of The People, *ex rel.* Duer, *v.* the Commissioners of Taxes, &c., and is there held to mean " that no greater proportion or percentage of tax on the valuation of . the shares should be levied, than upon other moneyed taxable capital in the hands of the citizens." This is in accordance with the view of this Court in the same case, as expressed in the opinion of the Court delivered by the Chief Judge. So that the fact that the assessment of this property is not subject to reduction for debts, while the assessment of other taxable personal property is, is no contradiction of the restriction contained in the act.

For the reasons above assigned, I am of the opinion that the order appealed from should be reversed, with costs.

Order reversed.          JOEL TIFFANY, State Reporter.