NATIONAL ALBANY EXCHANGE BANK *v.* HILLS and others.

*(Circuit Court, N. D. New York.  November, 1880.)*

1. SHARES OF NATIONAL BANKS—STATE TAXATION—STATUTE OF NEW YORK—REV. ST. § 5219.—An act of the legislature of the state of New York, passed April 23, 1866, provided in substance that a bank shareholder, who had been assessed upon the value of his shares, was not entitled to any deduction on account of his debts, although the general laws of the state provided that in the assessment of personal property a deduction should be made for the debts owing by the person so assessed. *Held*, that such provision of the act of 1866, so far as it related to the shares of a national banking association, violated the restriction contained in section 5219 of the Revised Statutes, which provided that the taxation of such shares should not be at a greater rate than was assessed upon other moneyed capital in the hands of individual citizens of the state.

    *Dolan* v. *People*, 36 N. Y. 59.
    *People* v. *Weaver*, 100 U. S. 539.

2 SAME—SAME.—The New York court of appeals having determined (*Dolan* v. *People*, 36 N. Y. 59) that the act of 1866 established a system of taxation for bank shares "peculiar to itself and independent of the

general system of taxation in existence in the state," and that " the act was intended as a substitute for the then-existing mode of assessing and taxing that portion of the property of the state in the capital of such moneyed corporations," *held,* that an assessment of the shares of a national banking association made under such act was void for want of power in the assessors to make such assessment.

3. NATIONAL BANK—COLLECTION OF TAXES—INJUNCTION.—In such case a bill in equity will lie, upon the complaint of a national bank, to restrain the collection of the amounts severally assessed upon the shares of the respective shareholders, in order to prevent a multiplicity of suits.—[ED.

In Equity.

This was a suit to restrain the collection of a tax assessed against the shareholders of a national bank.

*Matthew Hale,* for complainant.

*R. W. Peckham,* for defendants.

WALLACE, D. J. The complainant has filed its bill in equity to enjoin the collection of a tax assessed in 1879 against its shareholders by the board of assessors of the city of Albany, the defendants being the officers of the city charged with the collection of taxes.

The bill proceeds upon the theory—*First,* that the assessment against the shareholders is void, because there was no legal authority for making any assessment; *second,* if not void, for want of original authority, it was based upon a rule of unequal valuation of different classes of property, intentionally adopted by the assessors in order to discriminate unjustly against shareholders of national banks, and was excessive, and as to the excess the collection of the tax should be restrained. Both of these theories are grounded on that section of the act of congress relating to national banking associations, which restricts taxation of shares in such associations imposed by the authority of the state within which the association is located, by providing that the taxation shall not be at a greater rate than is assessed upon other money capital in the hands of individual citizens of such states.

The assessment complained of was made under color of an act of the legislature of this state, passed April 23, 1866, entitled "An act authorizing the taxation of banks and sur-

plus funds of savings banks." This act, as construed by the highest court of the state, in view of previous legislation, and upon consideration of the various provisions and directions of the act itself, established a system of taxation for bank shares "peculiar to itself and independent of the general system of taxation in existence in the state," and upon this ground it was decided by the court òf appeals (*Dolan* v. *People,* 36 N. Y. 59,) that a bank shareholder, who had been assessed upon the value of his sharès, was not entitled to any deduction on account of his debts, although the general laws of the state, and the local law relating to assessments in the city of Albany, contained provisions whereby, in the assessment of personal property, a deduction should be made for the debts owing by the person àssessed.

So far as this act contravenes the law of congress by imposing a tax upon shares of national banking associations at a greater rate than is assessed upon other moneyed capital in the hands of individuals, concededly it cannot stand; but the point in controversy is whether an assessment made under the act is void for want of power in the assessors to make any assessment, or is only erroneous when made without granting the deductions allowed by the general laws of the state. If the assessors have no power to make a valid assessment of the shares *eo nomine,* or against the owners for the value of their shares, the whole foundation of the taxation fails. On the other hand, if the assessors have authority to assess under the statute in question or under the other statutes of the state, then the inquiry arises whether the assessment is erroneous, because the proper deductions were denied, or because a rule of valuation which discriminated unfairly against the stockholders was adopted; and, this being so, whether there is any remedy except in a direct proceeding to review the assessment. Obviously, if the first theory of the complainant is sound, it is of no importance whether the shareholders of the complainant were, in fact, owing debts which should have been deducted from the assessment or not, because there was no jurisdiction for any action on the part of the assessors.

In the view of the case which I am constrained to adopt, it will not be necessary to examine the second theory which has been alluded to—a theory which, upon the facts, involves several difficult and doubtful questions of law; but I am of the opinion that the only authority for the assessment is to be found in the statute of 1866, and that act, as respects the taxation of shares in national banking associations, is radically vicious and can have no operation.    This conclusion is predicated upon the decision in *Dolan* v. *People,* and upon *People* v. *Weaver,* 100 U. S. 539.

The construction given to the act in *Dolan* v. *The People* is explicitly to the effect that the act is intended to establish a system of taxation for bank capital peculiar to itself, and independent of the general system of taxation in existence in the state.    It is there declared that "the act was intended as a substitute for the then-existing mode of assessing and taxing that portion of the property of the state invested in the capital of these moneyed corporations."    If this is the correct exposition of the statutory intent, it cannot be questioned that the act must stand or fall upon its own provisions, and cannot be sustained by treating it as a part of the general system of taxation, and reading it as though it contained those provisions found in other parts of the system which would secure to the holder of bank shares the same exemptions and privileges allowed to the holders of other money capital.    Accepting this as the true construction of the law, it was held by the supreme court of the United States, in *People* v. *Weaver,* that the operation of the laws to impose upon a citizen of the state, whose money was invested in bank shares, a greater rate of taxation than was imposed upon those whose capital was otherwise invested, is in violation of the prohibition of the law of congress.    It was only necessary to decide in the particular case that the person assessed was entitled to the deduction from his assessment on account of his debts which he claimed, and the question was not before the court whether or not the whole assessment was void; but the opinion proceeds upon the ground, and expressly declares, that the statute of the state is in conflict with the act of con-

gress, because it does not permit such deduction on account of debts.

It would seem that these decisions are conclusive to the effect that the act of 1866 is to be regarded as though it in terms declared not only that the shares in national banking associations should be taxed at a rate and upon an assessment prohibited by the act of congress, but also as though it declared that no other tax should be imposed on account of such shares, because, being a substitute for the existing provisions of the general laws as respects the taxation of capital represented by bank shares, it is by implication a repeal of those provisions.

The decisions of the courts of a state in the construction of a state statute, where no federal question is involved, are conclusive upon the courts of the United States, and the construction which was given by the court of appeals to this statute has been recognized as controlling and final by the supreme court of the United States. But it is urged on behalf of the defendants that the court of appeals may reconsider its views in the light of the decision of the supreme court, and the consequences which ensue from that decision. Undoubtedly these consequences may be serious, as shareholders of national banks may in some instances escape the payment of taxes upon their personal property to the extent such property is invested in bank shares. This consideration, as well as those graver ones which lead courts to seek for some construction of law which will uphold it if possible, would appeal with great force to any tribunal before which the question originally presented might come. But this court must take the law as it finds it, and must accept the decision of the court of appeals as authoritative. This court cannot substitute in the place of that decision its own judgment as to what the court of appeals might possibly decide upon a reconsideration of the questions involved.

Besides the decision of the court of appeals, reference should be made to the act of the legistature of June 26, 1880, as a legislative exposition of the act of 1866. The later act is clearly intended as a substitute for the act of 1866,

and does not vary essentially in its provisions from the earlier act, except that it expressly declares that in the assessment of bank shares each stockholder shall be allowed all the deductions and exemptions allowed by law, in assessing the value of other taxable personal property owned by individual citizens of the state, and the assessment and taxation shall not be at a greater rate than is made or assessed upon other moneyed capital in the hands of individual citizens of this state. This act was wholly unnecessary, if, as is contended for the defendants, the original act should be construed as though the provisions of the general laws relating to reductions were incorporated in it. It is much to be regretted that the conclusions thus reached may lead to the loss of a large sum in taxes justly due from tax payers to the municipality represented by the defendants. But the result must be attributed to ill-considered legislation, which, by attempting to impose an exceptional and unjust rule of taxation upon shareholders of national banks, has so far overshot its mark as to exonerate them from any taxation.

It is insisted for the defendants that the complainant is not the proper party to resist the payment of the tax, and that the stockholders are the only persons who can complain; and it is also insisted that an action to enjoin the collection of the tax is not the appropriate remedy. These objections may properly be considered together. The general rule that a bill in equity will not lie to restrain the collection of a tax is familiar; but the right to the relief sought here rests upon the ground that it is necessary to prevent a multiplicity of suits likely to arise, owing to the peculiar position which the complainant occupies toward its shareholders on the one side, and the defendants on the other.

The act of 1866 makes it the duty of every banking association to retain so much of any dividend or dividends belonging to its stockholders as may be necessary to pay any taxes assessed in pursuance of that act, and the case shows that most of the shareholders of the complainant paid to the complainant the amounts severally assessed upon their shares for the tax in controversy, or allowed the amount of the assess-

ments to be retained from their dividends, but that prior to the commencement of this action a considerable number of the shareholders filed their protest and forbade the complainant to pay over the amounts or to retain them for the purpose of paying the tax. The statute imposes a duty on the complainant in the nature of a trust, but which it can only discharge at the peril of being subjected to numerous suits at the hands of those whose money it retains. As is said in the similiar case of *Cummings* v. *Nat. Bank,* 101 U. S. 157, "it holds a trust relation which authorizes a court of equity to see that it is protected in the exercise of the duties pertaining to it. To prevent multiplicity of suits, equity may interfere."

It is true the statute in terms does not require the bank to pay the taxes assessed against its shareholders, but by necessary implication it authorizes the bank to do so, and thus brings the case precisely within the facts of *Cummings* v. *Nat. Bank.* That case must be regarded as a decisive authority against the objections urged here to the right of the complainant to the relief demanded.

A decree is ordered for the complainant.