231 U.S. 373
 34 S.Ct. 114
 58 L.Ed. 274
 PEOPLE OF THE STATE OF NEW YORK EX REL. AMOSKEAG SAVINGS BANK OF MANCHESTER, NEW HAMPSHIRE, Plff. in Err.,
v.
LAWSON PURDY and Others, Commissioners of Taxes and Assessments of the City of New York.
 No. 6.
 Argued December 4 and 5. 1912.
 Decided December 1, 1913.
 
 Messrs. Maxwell evarts and George Richards for plaintiff in error.
 Messrs.
 [Argument of Counsel from page 374 intentionally omitted]
 [375]
 William Herbert King, Lawson Purdy, and Archibald R. Watson for defendants in error.
 Mr. Justice Pitney delivered the opinion of the court:
 
 
 1
 The question presented is the validity of certain taxes imposed in the year 1908 by the taxing officers of New York city upon some shares of stock in certain national banking associations located in that city, which shares were owned by the relator, a New Hampshire corporation doing business in its home state. The taxable value of the shares was ascertained by the commissioners of taxes and assessments, in accordance with the provisions of the law of the state of New York, by adding together the capital, surplus, and undivided profits of each bank, and dividing the amount by the number of outstanding shares. It is admitted that at the time of the making of this assessment the relator owed just debts exceeding the value of its gross personal estate, including its bank shares, after deducting therefrom the value of its property taxable elsewhere and the value of its property not taxable anywhere; that no portion of such debts had been deducted from the assessment of any of its personal property, other than the bank shares; and that no portion of the indebtedness was contracted in the purchase of nontaxable property or securities, or for the purpose of evading taxation. Relator made application to the commissioners of taxes and assessments for the cancelation of the assessment, upon the ground that it was entitled to have its indebtedness deducted from the assessed valuation of the bank shares. This application was denied, a proceeding by certiorari taken to review the determination of the commissioners was dismissed at the special term of the supreme court of New York; the appellate division affirmed the dismissal (134 App. Div. 966, 119 N. Y. Supp. 1139), upon the authority of People ex rel. Bridgeport Sav. Bank v. Feitner, 191 N. Y. 88, 83 N. E. 592, and the court of appeals affirmed the order of the appellate division, upon the same authority (198 N. Y. 503, 92 N. E. 1096). The case comes here by writ of error under § 709, Rev. Stat. (U. S. Comp. Stat. 1901, p. 575) (Judicial Code, § 237 [36 Stat. at L. 1156, chap. 231, U. S. Comp. Stat. Supp. 1911, p. 227]), upon the ground that the taxation imposed is in violation of the rights of the relator under § 5219, Rev. Stat. (U. S. Comp. Stat. 1901, p. 3502).[1]
 
 
 2
 The contention of the plaintiff in error, made in the state tribunals and reiterated here, is that the taxes are invalid because made without allowing any deduction for relator's debts, as alleged to be allowed by the laws of New York in the case of other moneyed capital in the hands of individual citizens of that state; it being insisted that inasmuch as the debts of relator exceeded the valuation of the bank shares, the assessment should be wholly canceled.
 
 
 3
 The taxing laws in force at the time the assessment was made were, in the following year, consolidated and re-enacted as the 'tax law.' (Laws 1909, chap. 62; in effect February 17, 1909, Consol. Laws, chap. 60.) Those sections that are deemed in anywise pertinent to the matter in issue are set forth in full in the margin.[1]
 
 
 4
 Sec. 21 provides for the preparation of the assessment roll, and requires that it shall contain separate columns, in which the assessing officers shall set down the pertinent items, and, among others, '4. In the fourth column the full value of all the taxable personal property owned by each person respectively, after deducting the just debts owing by him.' This provision is held to apply equally to corporations and individuals (People ex rel. Cornell S. B. Co. v. Dederick, 161 N. Y. 195, 55 N. E. 927), and has the effect of allowing a deduction of the amount of the debts of the taxpayer from the valuation of his general personal estate, not, however, including bank shares, which are dealt with in other sections. Sec. 23 requires the chief fiscal officer of every bank or banking association organized under the laws of the state or of the United States to furnish annually, on or before July 1st, to the assessors of the tax district in which its principal office is located, a sworn statement of the condition of the bank on the 1st day of June next preceding, stating the amount of its capital stock, surplus, and undivided profits, the number of shares, and the names and residences of the stockholders, with the number of shares held by each. Sections 13 and 24 relate to the taxation of these shares, stockholders in state and in national banks being treated alike. Section 13 takes the place of § 13 of the tax law of 1896 (Laws, 1896, chap. 908, p. 802). Section 24 of the latcapital ter act was amended by Laws 1901, chap. 550; Laws 1902, chap. 126; Laws 1903, chap. 267; Laws 1907, chap. 739; and in its final form became § 24 of the tax law of 1909. In this form § 24 is evidently a more recent enactment than § 13, and, so far as inconsistent, impliedly repeals it. The provision of § 13 for taxing bank shares in the district where the bank is located remains in force. It will be observed that § 24 declares (in obedience to § 5219, Rev. Stat. [U. S. Comp. Stat. 1901, p. 3502] ) that 'the assessment and taxation shall not be at a greater rate than is made or assessed upon other moneyed capital in the hands of individual citizens of this state;' that the valuation of the shares of going concerns is to be ascertained by dividing the amount of capital stock, surplus, and undivided profits by the number of shares; the valuation, in the case of banks in liquidation, to be fixed by dividing the actual assets by the number of shares; that a fixed rate of tax equal to 1 per centum upon the value thus ascertained is imposed without deduction because of the personal indebtedness of the owners, or for any other reason; that the tax is in lieu of all other state taxation upon the choses in action and personal property held by the bank whose value enters into the valuation of its shares of stock; that this section is not to be construed as an exemption of the real estate of the banks from taxation; and that no share of stock of such banks, by whomsoeven ever held, is to be exempt from the tax imposed. In construing § 24, the court of appeals of New York had held (People ex rel. Bridgeport Sav. Bank v. Feitner, 191 N. Y. 88, 96, 83 N. E. 592) that the effect of introducing into the section the limitation prescribed by § 5219, Rev. Stat. (U. S. Comp. Stat. 1901, p. 3502), is such that if any bank is located in a tax district where the rate is less than 1 per centum, its stockholders are entitled to a reduction to conform to the local rate.
 
 
 5
 Respecting other moneyed capital, trust companies, by § 188, are subjected to an annual franchise tax 'equal to 1 per centum, on the amount of its capital stock, surplus, and undivided profits.' The practical burden of such a tax (which of course falls eventually upon the stockholder) is presumably not materially different from the burden of a tax at the same rate, imposed upon the individual stockholder on a valuation of his shares, arrived at by taking into consideration the same elements of capital stock, surplus, and undivided profits. And of course the stockholder has no relief from such a franchise tax because of his individual debts. By § 189 savings banks are subjected to a franchise tax of 1 per centum on the par value of the surplus and undivided earnings. These institutions are thus apparently taxed upon the basis of what they possess over and above what they owe to their depositors. The individual banker, by §§ 14 and 25, is taxed at the place where his business is located upon he 'amount of capital invested in his banking business.'
 
 
 6
 It is not insisted that this tax law discriminates against national banks or the stockholders thereof as compared particularly with individual bankers, trust companies, or savings banks. The ground of complaint is that § 24, in providing that owners of bank stock (state or national) shall not be entitled to deduction from the taxable value of their shares because of their personal indebtedness, is contrary to the restriction contained in§ 5219, Rev. Stat (U. S. Comp. Stat. 1901, p. 3502), that the shares of national banks shall not be taxed 'at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state,' because, under § 21 of the tax law, all persons are permitted to deduct their debts from their other taxable personal property in general, including, as is claimed, other moneyed capital.
 
 
 7
 Plaintiff in error relies chiefly upon the decision of this court in New York v. Weaver, 100 U. S. 539, 25 L. ed. 705. That case was in effect a review of the decision of the court of appeals of New York in People ex rel. Cagger v. Dolan, 36 N. Y. 59. The question was as to the validity of an assessment and taxation of national bank shares in the city of Albany under the state law of April 23, 1866 (N. Y. Laws 1866, p. 1647), without deduction because of the indebtedness of the taxpayer, in view of the fact that under other laws the owners of other kinds of personal property were entitled to have the amount of their debts deducted from the valuation for the purposes of taxation. The state court in the Dolan Case had justified the method adopted in taxing the bank shares, upon reasoning that assumed 'that while Congress limited the state authorities in reference to the ratio or percentage levied on the value of these shares, which could not be greater than on other moneyed capital invested in the state, it left the matter of the relative valuation of the shares and of other moneyed capital wholly to the control of state regulation.' This court held that the clause in § 5219,—'that the taxation shall not be at a greater rate than is assessed upon other moneyed capital,' etc., meant that the taxation upon shares should not be greater than on other moneyed capital, taking into consideration both the rate of assessment and the valuation. In other words, that the restriction contained in the act of Congress had to do with the actual incidence and practical burden of the tax upon the taxpayer.
 
 
 8
 This decision was followed by several others to the same effect. In Albany County v. Stanley, 105 U. S. 305, 26 L. ed. 1044, it was pointed out that the decision in the Weaver Case had not the effect of declaring the New York act of 1866 void, but only of deciding that the tax there in question was void because the taxpayer had been refused the same deduction for his debts that was allowed to other taxpayers having moneyed capital otherwise invested. Hills v. National Albany Exch. Bank, 105 U. S. 319, 26 L. ed. 1052, and Evansville Nat. Bank v. Britton, 105 U. S. 322, 26 L. ed. 1053, applied the same principle.
 
 
 9
 But the pertinent statutes in the Weaver Case differed from those now before us, and the authority of that decision is not controlling. The act of 1866 is quoted in full in the report, 100 U. S. at p. 540. And in that case, as the opinion shows (pp. 542, 543), it was not disputed—'that the effect of the state law is to permit a citizen of New York, who has money capital invested otherwise than in banks, to deduct from that capital the sum of all his debts, leaving the remainder alone subject to taxation, while he whose money is invested in shares of bank stocks can make no such deduction. Nor, inasmuch as nearly all the banks in that state and in all others are national banks, can it be denied that the owner of such shares who owes debts is subjected to a heavier tax on account of those shares than the owner of moneyed capital otherwise invested, who also is in debt, because the latter can diminish the amount of his tax by the amount of his indebtedness, while the former cannot. That this works a discrimination against the national bank shares as subjects of taxation, unfavorable to the owners of such shares, is also free from doubt.'
 
 
 10
 The tax law of New York now in question is materially different. As already shown, moneyed capital is dealt with for the purposes of taxation upon lines different from those upon which the taxation of other personal property proceeds. By §§ 13 and 24, state bank shares and national bank shares are both dealt with, and they are treated alike, being assessed not upon the basis of market values, but upon a valuation deterned by a consideration of the capital stock, surplus, and undivided profits (yielding what is commonly known as 'book value'), and leaving out of consideration other elements, such as good will and the like, which enter into the determination of the actual market value of such shares. On the other hand, personal property in general is by § 21 to be assessed at its full value, which presumably means market value. Sec. 24, instead of subjecting the owners of bank shares to taxation at the rate locally obtaining for other personal property, imposes a 'flat rate' of 1 per centum upon the valuation, with the proviso, as held in the Feitner Case, supra, that if the local rate be less than 1 per centum, the owners of shares in the bank have the benefit of it.
 
 
 11
 Enough has been said to show that the decision in the Weaver Case, which had to do with a tax assessed upon bank stock on the basis of the same method of valuation and the same rate of assessment as personal property in general, including other moneyed capital, but without allowance for the indebtedness of the taxpayer, although such allowance was made to the owners of personal property in general, including other moneyed capital, is not to be deemed conclusive upon the present controversy, in view of the differences in the taxing laws.
 
 
 12
 The Weaver Case, however, and others that followed it, did establish that the question whether an owner of national bank shares has been subjected to a state tax in excess of the limitation imposed by § 5219, Rev. Stat. (U. S. Comp. Stat. 1901, p. 3502), is a practical question, to be determined by considering whether he is actually discriminated against in favor of other moneyed capital in the hands of individual citizens of the state. And the meaning of the term 'other moneyed capital' has been elucidated by several decisions, of which the leading one is Mercantile Nat. Bank v. New York, 121 U. S. 138, 30 L. ed. 895, 7 Sup. Ct. Rep. 826. This was a suit brought by a national bank to restrain the collection of taxes assessed upon its stockholders under New York Laws 1882, chap. 409, § 312.—an enactment that followed the general lines of the act of 1866, dealt with in the Weaver Case, and quoted in the opinion of the court therein, except that in obedience to that decision the act of 1882 required that—'in the assessment of said shares, each stockholder shall be allowed all the deductions and exceptions allowed by law in assessing the value of other taxable personal property owned by individual citizens of this state.' The contention was that the state had not complied with the condition contained in § 5219 of the Revised Statutes, because it had by its legislation expressly exempted from all taxes in the hands of individual citizens numerous species of moneyed capital, while subjecting national bank shares and state bank shares in the hands of individual holders to taxation upon their full actual value, less only a proportionate amount of the real estate owned by the bank. The court (speaking by Mr. Justice Matthews), in examining and disposing of this contention, after reviewing the previous decisions of this court bearing upon the subject, proceeded to expound the true intent and meaning of § 5219 of the Revised Statutes as follows (p. 153):
 
 
 13
 'It follows, as a deduction from these decisions, that 'moneyed capital in the hands of individual citizens' does not necessarily embrace shares of stock held by them in all corporations whose capital is employed, according to their respective corporate powers and privileges, in business carried on for the pecuniary profit of shareholders, although shares in some corporations, according to the nature of their business, may be such moneyed capital. . . . The key to the proper interpretation of the act of Congress is its policy and purpose. The object of the law was to establish a system of national banking institutions, in order to provide a uniform and secure currency for the people, and to facilitate the operations of the Treasury of the United States. The capital of each of the banks in this system was to be furnished entirely by private individuals; but, for the protection of the government and the people, it was required that this capital, so far as it was the security for its circulating notes, should be invested in the bonds of the United States. These bonds were not subjects of taxation; and neither the banks themselves, nor their capital, however invested, nor the shares of stock therein held by individuals, could be taxed by the states in which they were located without the consent of Congress, being exempted from the power of the states in this respect, because these banks were means and agencies established by Congress in execution of the powers of the government of the United States. It was deemed consistent, however, with these national uses, and otherwise expedient, to grant to the states the authority to tax them within the limits of a rule prescribed by the law. In fixing those limits it became necessary to prohibit the states from imposing such a burden as would prevent the capital of individuals from freely seeking investment in institutions which it was the express object of the law to establish and promote. The business of banking, including all the operations which distinguish it, might be carried on under state laws, either by corporations or private persons, and capital in the form of money might be invested and employed by individual citizens in many single and separate operations forming substantial parts of the business of banking. A tax upon the money of individuals, invested in the form of shares of stock in national banks, would diminish their value as an investment, and drive the capital so invested from this employment, if at the same time similar investments and similar employments under the authority of state laws were exempt from an equal burden. The main purpose, therefore, of Congress, in fixing limits to state taxation on investments in the shares of national banks, was to render it impossible for the state, in levying such a tax, to create and foster an unequal and unfriendly competition, by favoring institutions or individuals carrying on a similar business and operations and investments of a like character. The language of the act of Congress is to be read in the light of this policy.'
 
 
 14
 And again (p. 157): 'The terms of the act of Congress, therefore, include shares of stock or other interests owned by individuals in all enterprises in which the capital employed in carrying on its business is money, where the object of the business is the making of profit by its use as money. The moneyed capital thus employed is invested for that purpose in securities by way of loan, discount, or otherwise, which are from time to time, according to the rules of the business, reduced again to money and reinvested. It includes money in the hands of individuals, employed in a similar way, invested in loans, or in securities for the payment of money, either as an investment of a permanent character, or temporarily, with a view to sale or repayment and reinvestment. In this way the moneyed capital in the hands of individuals is distinguished from what is known generally as personal property. Accordingly, it was said in Evansville Nat. Bank v. Britton, 105 U. S. 322, 26 L. ed. 1053: 'The act of Congress does not make the tax on personal property the measure of the tax on the bank shares in the state, but the tax on moneyed capital in the hands of the individual citizens. Credits, money loaned at interest, and demands against persons or corporations, are more purely representative of moneyed capital than personal property, so far as they can be said to differ. Undoubtedly there may be said to be much personal property exempt from taxation without giving bank shares a right to similar exemption, because personal property is not necessarily moneyed capital. But the rights, credits, demands, and money at interest mentioned in the Indiana statute, from which bona fide debts may be deducted, all mean moneyed capital invested in that way.' This definition of moneyed capital in the hands of individuals seems to us to be the idea of the law, and ample enough to embrace and secure its whole purpose and policy.'
 
 
 15
 The rule of construction thus laid down has been since consistently adhered to by this court. Palmer v. McMahon, 133 U. S. 660, 667, 33 L. ed. 772, 775, 10 Sup. Ct. Rep. 324; First Nat. Bank v. Chehalis County, 166 U. S. 440, 454, 41 L. ed. 1069, 1075, 17 Sup. Ct. Rep. 629; First Nat. Bank v. Chapman, 173 U. S. 205, 214, 43 L. ed. 669, 673, 19 Sup. Ct. Rep. 407; Commercial Nat. Bank v. Chambers, 182 U. S. 556, 560, 45 L. ed. 1227, 1229, 21 Sup. Ct. Rep. 863; Jenkins v. Neff, 186 U. S. 230, 46 L. ed. 1140, 22 Sup. Ct. Rep. 905.
 
 
 16
 According to this practical test, it seems to us that the scheme adopted by the state of New York for taxing shares in national banks cannot upon this record be denounced as violative of the limitations prescribed by § 5219, Rev. Stat. (U. S. Comp. Stat. 1901, p. 3502). The holders of shares in state banks are subjected to precisely the same taxation, and with respect to other competitive institutions, such as trust companies, the franchise taxes imposed upon them apparently result in a substantially similar burden upon the shareholder. Nor is there any discrimination in favor of savings banks. With respect to individual bankers, there is a difference, they being apparently subject to the local rate of taxation, and entitled to the privilege of deduction for personal debts; but as they are taxable upon the amount of the capital invested in the banking business, which is normally only such as remains after the deduction of debts, it is not plain that they possess any valuable privilege of reducing the tax assessment by deducting debts. Foreign bankers are separately treated, for reasons sufficiently obvious; but no criticism is made of this. If there be other forms of 'moneyed capital in the hands of individual citizens' of the state employed in a banking or quasi-banking business in competition with the national banks, and which are subjected to a more favorable rule of taxation, our attention is not called to them. Moreover, we agree with what was said by the court of appeals of New York in the Feitner Case (191 N. Y. 88, 96, 83 N. E. 592) that 'the state is not obliged to apply the same system to the taxation of national banks that it uses in the taxation of other property, provided no injustice, inequality, or unfriendly discrimination is inflicted upon them.' The court there took note of the fact that the flat rate of 1 per centum assessed upon national bank shares was more favorable to the relator than the general tax rate for the same year in the borough of Manhattan, where the banks were located. That local rate (for the lear 1901) was 2.31733 per centum. In the present case it is stipulated that the general tax rate locally applicable for the year 1908 to personal property, not including bank shares, was 1.61407 per centum. There are other considerations to be weighed in determining the actual burden of the tax, one of which is the mode of valuing bank shares—by adopting 'book values'—which may be more or less favorable than the method adopted in valuing other kinds of personal property. As against the owner of bank shares who, by alleging discrimination, assumes the burden of proving it, and who fails to show that the method of valuation is unfavorable to him, it may be assumed to be advantageous.
 
 
 17
 Plaintiff in error contends that the statement of the New York court that 'when all things are considered, the rate, even without the privilege of deducting debts, is not greater than that applied to other moneyed capital in the hands of individual citizens of the state,' is based upon no facts of experience or investigation, and amounts to a pure surmise. We do not think it is to be so lightly treated; but, if it were, it still remains to be said that it was incumbent upon plaintiff in error to show affirmatively that the New York taxation system discriminates in fact against the holders of shares in the national banks, before calling upon the courts to overthrow it; and no such showing has been made.
 
 
 18
 Nor can we say that the taxing scheme contravenes the limits prescribed by § 5219, Rev. Stat. (U. S. Comp. Stat. 1901, p. 3502), merely because in individual cases it may result that an owner of shares of national bank stock, who is indebted, may sustain a heavier tax than another, likewise indebted, who has invested his money otherwise. Such is, in effect, the objection urged by plaintiff in error to the position taken by the court of appeals of New York. In other words, it is insisted that § 5219 deals with the burden of the tax upon the individual shareholder, rather than upon shareholders as a class. We think this argument is sufficiently answered by reference to the language of § 5219. The declaration is that 'the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state.' And this restriction is imposed upon a grant of authority to tax 'all the shares of national banking associations located within the state.' The language clearly prohibits discrimination against shareholders in national banks, and in favor of the shareholders of competing institutions, but it does not require that the scheme of taxation shall be so arranged that the burden shall fall upon each and every shareholder alike, without distinction arising from circumstances personal to the individual.
 
 
 19
 Judgment affirmed.
 
 
 
 [1]
 Sec. 5219. Nothing herein shall prevent all the shares in any association from being included in the valuation of the personal property of the owner or holder of such shares, in assessing taxes imposed by authority of the state within which the association is located; but the legislature of each state may determine and direct the manner and place of taxing all the shares of national banking associations located within the state, subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by nonresidents of any state shall be taxed in the city or town where the bank is located, and not elsewhere. Nothing herein shall be construed to exempt the real property of associations from either state, county, or municipal taxes, to the same extent, according to its value, as other real property is taxed.
 
 
 [2]
 EXTRACTS FROM NEW YORK TAX LAW.
 Section 7:
 '§ 7. When property of nonresidents is taxable.—1. Nonresidents of the state, doing business in the state, either as principals or partners, shall be taxed on the invested in such busi-
 ness, as personal property, at the place where such business is carried on, to the same extent as if they were residents of the state.'
 Sections 14 and 25:
 '§ 14. Place of taxation of individual bank capital.—Every individual banker shall be taxable upon the amount of capital invested in his banking business in the tax district where the place of such business is located, and shall, for that purpose, be deemed a resident of such tax district.'
 '§ 25. Individual banker, how assessed. —Every individual banker doing business under the laws of this state must report before the 15th day of June under oath to the assessors of the tax district in which any of the capital invested in such banking business is taxable, the amount of capital invested in such banking business in such tax district on the 1st day of June preceding. Such capital shall be assessed as personal property to the banker in whose name such business is carried on.'
 Section 21:
 '§ 21. Preparation of assessment roll.—They shall prepare an assessment roll containing nine separate columns, and shall, according to the best information in their power, set down:
 '1. In the first column the names of all the taxable persons in the tax district.
 '2. In the second column the quantity of real property taxable to each person, with a statement thereof in such form as the commissioners of taxes shall prescribe.
 '3. In the third column the full value of such real property.
 '4. In the fourth column the full value of all the taxable personal property owned by each person respectively after deducting the just debts owing by him. . . .'
 Section 13:
 '§ 13. Stockholders of bank taxable on shares.—The stockholders of every bank or banking association organized under the authority of this state, or of the United States, shall be assessed and taxed on the value of their shares of stock therein; said shares shall be included in the valuation of the personal property of such stockholders in the assessment
 of taxes in the tax district where such bank or banking association is located, and not elsewhere, whether the said stockholders reside in said tax district or not.'
 Section 23:
 '§ 23. Banks to make report.—the chief fiscal officer of every bank or banking association organized under the authority of this state, or of the United States, shall, on or before the 1st day of July, in each year, furnish the assessors of the tax district in which its principal office is located a statement under oath of the condition of such bank or banking association on the 1st day of June next preceding, stating the amount of its authorized capital stock, the number of shares, and the par value of the shares thereof, the amount of stock paid in, the amount of its surplus and of its undivided profits, if any, a complete list of the names and residences of its stockholders, and the number of shares held by each. . . . The list of stockholders furnished by such bank or banking association shall be deemed to contain the names of the owners of such shares as are set opposite them, respectively, for the purpose of assessment and taxation.'
 Section 24:
 '§ 24. Bank shares, how assessed.—In assessing the shares of stock of banks or banking associations organized under the authority of this state or the United States, the assessment and taxation shall not be at a greater rate than is made or assessed upon other moneyed capital in the hands of individual citizens of this state. The value of each share of stock of each bank and banking association, except such as are in liquidation, shall be ascertained and fixed by adding together the amount of the capital stock, surplus, and undivided profits of such bank or banking association, and by dividing the result by the number of outstanding shares of such bank or banking association. The value of each share of stock in each bank or banking association in liquidation shall be ascertained and fixed by dividing the actual assets of such bank or banking association by the number of outstanding shares of such bank or banking association. The rate of tax upon the shares of stock of banks and banking associations shall be 1 per centum upon the value thereof, as ascertained and fixed in the manner hereinbefore pro-
 vided, and the owners of the stock of banks and banking associations shall be entitled to no deduction from the taxable value of their shares because of the personal indebtedness of such owners, or for any other reason whatsoever. Complaints in relation to the assessments of the shares of stock of banks and banking associations, made under the provisions of this article, shall be heard and determined as provided in § 37 of this chapter. The said tax shall be in lieu of all other taxes whatsoever for state, county, or local purposes upon the said shares of stock, and mortgages, judgments, and other choses in action, and personal property held or owned by banks or banking associations, the value of which enters into the value of said shares of stock, shall also be exempt from all other state, county, or local taxation. The tax herein imposed shall be levied in the following manner: The board of supervisors of the several counties shall, on or before the 15th day of December in each year, ascertain from an inspection of the assessment rolls in their respective counties, the number of shares of stock of banks and banking associations in each town, city, village, school, and other tax district, in their several counties, respectively, in which such shares of stock are taxable, the names of the banks issuing the same, respectively, and assessed value of such shares, as ascertained in the manner provided in this article and entered upon the said assessment rolls, and shall forthwith mail to the president or cashier of each of said banks or banking associations a statement setting forth the amount of its capital stock, surplus, and undivided profits, the number of outstanding shares thereof, the value of each share of stock taxable in said county, as ascertained in the manner herein provided, and the aggregate amount of tax to be collected and paid by such bank and banking association, under the provisions of this article. A certified copy of each of said statements shall be sent to the county treasurer. It shall be the duty of every bank or banking association to collect the tax due upon its shares of stock from the several owners of such shares, and to pay the same to the treasurer of the county wherein said bank or banking association is located, and in the city of New York to the receiver of taxes thereof on or before the 31st day of December in said year; and any bank or banking association failing to pay the
 said tax as herein provided shall be liable by way of penalty for the gross amount of taxes due from all the owners of the shares of stock, and for an additional amount of $100 for every day of delay in the payment of said tax. Every bank or banking association so paying the taxes due upon the shares of its stock shall have a lien on the shares of stock, and on all property of the several share owners in its hands, or which may at any time come into its hands, for reimbursement of the taxes so paid on account of the several shareholders, with legal interest; and such lien may be enforced in any appropriate manner. The tax hereby imposed shall be distributed in the following manner: The board of supervisors of the several counties shall ascertain the tax rate of each of the several town, city, village, school, and other tax districts in their counties, respectively, in which the shares of stock of banks and banking associations shall be taxable, which tax rates shall include the proportion of state and county taxes levied in such districts, respectively, for the year for which the tax is imposed, and the proportion of the tax on bank stock to which each of said districts shall be respectively entitled shall be ascertained by taking such proportion of the tax upon the shares of stock of banks and banking associations, taxable in such districts, respectively, under the provisions of this chapter, as the tax rate of such tax district shall bear to the aggregate tax rates of all the tax districts in which said shares of stock shall be taxable. The clerks of the several cities, villages, and school districts to which any portion of the tax on shares of stock of banks and banking associations is to be distributed under this section shall, in writing and under oath, annually report to the board of supervisors of their respective counties, during the first week of the annual session of such board, the tax rate of such city, village, and school district for the year prior to the meeting of each such board. The said board of supervisors shall issue their warrant or order to the county treasurer on or before the 15th day of December in each year, setting forth the number of shares of bank stock taxable in each town, city, village, school, and other tax district in said county, in which said shares of stock shall be taxable, the tax rate of each of said tax districts for said year, the proportion of the tax imposed by this chapter to which each of said tax
 districts is entitled, under the provisions hereof, and commanding him to collect same, and to pay to the proper officer in each of such districts the proportion of such tax to which it is entitled under the provisions of this chapter. The said county treasurer shall have the same powers to enforce the collection and payment of said tax as are possessed by the officers now charged by law with the colection of taxes, and the said county treasurer shall be entitled to a commission of 1 per centum for collecting and paying out said moneys, which commission shall be deducted from the gross amount of said taxes before the same is distributed. In issuing their warrants to the collectors of taxes, the board of supervisors shall omit therefrom assessments of and taxes upon the shares of stock of banks and banking associations. Provided, that, in the city of New York the statement of the bank assessment and tax herein provided for shall be made by the board of tax commissioners of said city, on or before the 15th day of December in each year, and by them forthwith mailed to the respective banks and banking associations located in said city, and a certified copy thereof sent to the receiver of taxes of said city. The tax shall be paid by the respective banks in said city to the said receiver of taxes on or before the 31st day of December in said year, and said tax shall be collected by the said receiver of taxes, and shall be by him paid into the treasury of said city to the credit of the general fund thereof. This section is not to be construed as an exemption of the real estate of banks or banking associations from taxation. No shares of stock of such banks and banking associations, by whomsoever held, shall be exempt from the tax hereby imposed.'
 Section §88:
 '§ 188. Franchise tax on trust companies.—Every trust company incorporated, organized, or formed under, by, or pursuant to a law of this state, and any company authorized to do a trust company's business solely or in connection with any other business, under a general or special law of this state, shall pay to the state annually for the privilege of exercising its corporate franchise or carrying on its business in such
 corporate or organized capacity, an annual tax which shall be equal to 1 per centum on the amount of its capital stock, surplus, and undivided profits.'
 Section 189:
 '§ 189. Franchise tax on savings banks.—Every savings bank incorporated, organized, or formed under, by, or pursuant to a law of this state, shall pay to the state annually for the privilege of exercising its corporate franchise or carrying on its business in such corporate or organized capacity, an annual tax which shall be equal to 1 per centum on the par value of its surplus and undivided earnings.'
 Section 191:
 '§ 191. Tax upon foreign bankers.—Every foreign banker doing business in this state shall annually pay to the treasurer a tax of 5 per centum on the amount of interest or compensation of any kind earned and collected by him on money loaned, used, or employed in this state by such banker. The term, 'doing a banking business,' as used in this section, means doing such business as a corporation may be created to do under article 3 of the banking law, or doing any business which a corporation is authorized by such article to do. The term 'foreign banker doing a banking business in this state,' as used in this section, includes:
 '1. Every foreign corporation doing a banking business in this state, except a national bank.
 '2. Every unincorporated company, partnership, or association of two or more individuals, organized under or pursuant to the laws of another state or country, doing a banking business in this state.
 '3. Every other incorporated company, partnership, or association, of two or more individuals, doing a banking business in this state, if the members thereof, owning more than a majority interest therein, or entitled to more than one half of the profits thereof, or who would, if it were dissolved, be entitled to more than one half of the net assets thereof, are not residents of this state.
 '4. Every nonresident of this state, doing a banking business in this state, in his own name and right only.'
 
 
 [1]
 Consol. Laws 1909, c. 60.