THE PEOPLE OF THE STATE OF NEW YORK ex rel. THOMAS
SIMPSON, Appellant, *v.* JAMES L. WELLS et al., as Com-
missioners of Taxes and Assessments of the City of New
York, Respondents.

1. CONSTITUTIONAL LAW — CONSTRUCTION OF STATUTE. A statute
will not be declared unconstitutional if by any reasonable construction
it can be given a meaning in harmony with the fundamental law.

2. NEW YORK (CITY OF) — NOTICE OF INCREASE OF ASSESSED VALUA-
TION OF PROPERTY — CHARTER PROVISION (§ 896) RELATING THERETO
CONSTRUED. Section 896 of the charter of the city of New York (L. 1901,
ch. 466) providing that the board of taxes and assessments "may increase
at any time before the first of April in each year, or may diminish at any
time before the closing of the books * * * on the first day of April
* * * the assessed valuation of" property, but "shall not increase
such valuation * * * except on notice given * * * at least ten days
before the fifteenth of April"— alleged to be unconstitutional because in
the case of an increase it provides for no adequate notice to the owner, in
that the notice may be given too late for a hearing before the books are
closed and the increased assessment has become fixed on April first — is not
invalid for that reason; when read in connection with other sections of the
charter, especially sections 892 and 895, no such construction is permissible;
the books do not close on April first as to an increased assessment except
in cases where no complaints are made, or if made they are investigated
and decided on or before that day; the board is expressly authorized to
give ten days' notice thereof after April first and before the fifteenth;
having this authority it must necessarily have the power to decide there-
after any complaint made on or before the fifteenth day, since it will not
be presumed that the legislature intended to provide for a notice which
could not be followed by a hearing and decision; the increased assessment,
therefore, does not in such cases become permanent on April first, and
timely notice thereof is provided. The procedure under the statute both
as to original and increased assessments stated in detail.

*People ex rel. Simpson* v. *Wells,* 99 App. Div. 364, affirmed.

(Argued April 10, 1905; decided April 18, 1905.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the first judicial department, entered Decem-
ber 31, 1904, which affirmed an order of Special Term quash-
ing a writ of certiorari to review an assessment of real property
of the relator for the purpose of taxation.

The facts, so far as material, are stated in the opinion.

*Arthur Neville* for appellant.   Section 896 of the New York city charter, as amended (L. 1901, ch. 466), authorizing the board of taxes and assessments to increase the assessed valuation of real and personal property, is unconstitutional in that it fails to provide for giving notice to persons affected by such increase and affording them an opportunity to be heard before the assessment becomes conclusive against them. (*McLaughlin* v. *Miller*, 124 N. Y. 510; *Mygatt* v. *Washburn*, 15 N. Y. 321; *Whitney* v. *Thomas*, 23 N. Y. 281; *People ex rel.* v. *Wemple*, 144 N. Y. 478; *Stewart* v. *Palmer*, 74 N. Y. 188; *Gilman* v. *Tucker*, 128 N. Y. 190; *Coxe* v. *State*, 144 N. Y. 396; *Colon* v. *Lisk*, 153 N. Y. 188; *People ex rel.* v. *Wemple*, 117 N. Y. 84; *Matter of Trustees of Union College*, 129 N. Y. 308.)   Section 896 of the charter being unconstitutional, and there being no law authorizing the board of taxes and assessments to increase assessments after the second Monday in January, they acted without jurisdiction in making the increased and new assessments. (*People ex rel.* v. *Comrs.*, 91 N. Y. 593; *People ex rel.* v. *Wemple*, 144 N. Y. 478; *People ex rel.* v. *Forrest*, 96 N. Y. 544.) The right to a hearing given by section 895 cannot, by implication, be extended to taxpayers whose assessments have been increased under section 896. (*People ex rel.* v. *Selkirk*, 180 N. Y. 401; *Stuart* v. *Palmer*, 74 N. Y. 83; *Matter of Trustees of N. Y. P. E. School*, 31 N. Y. 573; *Matter of Bd. of Suprs.*, 172 N. Y. 309.)

*John J. Delany*, Corporation Counsel (*George S. Coleman* of counsel), for respondents.   The charter provisions are constitutional. (*Kentucky R. R. Tax Cases*, 115 U. S. 321; *People ex rel.* v. *Comrs. of Taxes*, 41 Hun, 373; *People ex rel.* v. *Barker*, 140 N. Y. 437.)

VANN, J.   The relator is the lessee of three parcels of land in the city of New York and is under covenant with the lessor to pay all taxes and assessments levied thereon during the term.   On the second Monday of January, 1903, these par-

cels were respectively assessed at the sums of $70,000, $35,000 and $32,000, which, on the 25th of March following, were increased by the respondents to $105,000, $40,000 and $35,000. The tax commissioners claim that they were authorized to make this increase by section 896 of the city charter, which is as follows :

" The board of taxes and assessments may increase at any time before the first of April in each year, or may diminish at any time before the closing of the books of ' annual record ' on the first day of April in each year, the assessed valuation of any real or personal estate of any individual or corporation, as in its judgment may be just or necessary for the equalization of taxation ; but it shall not increase such valuations of the property of any individual or corporation after said books are opened for correction and review, except upon notice given to the individual or corporation affected by such increase at least ten days before the fifteenth day of April in each year." (L. 1901, ch. 466.)

The relator does not claim that the assessment is unequal or unjust, or that he or his lessor had no notice of the increase when it was proposed, or that they had no opportunity to be heard before it was made permanent. He insists, however, that said section is unconstitutional and, hence, that notice to him, even if given in time for a hearing, is immaterial, because no authority to increase the assessment can be conferred by a statute passed in violation of the Constitution. He founds his contention not upon what was done in this case, but upon what he claims might be done in any case. His argument, in substance, is that according to the statute, the books of annual record are opened for examination on the second Monday of January and closed on the first of April; that said section authorizes an increase at any time after the books are opened and before they are closed, but forbids an increase without notice to the person interested at least ten days before the fifteenth of April; that a notice served after the first and before the fifteenth of April would be practically no notice, because too late for a hearing before the books are closed and

that an increase of valuation without notice would deprive the taxpayer of property without due process of law. He also claims that the statute is defective because it does not provide for a hearing as matter of right and that a hearing by favor only does not satisfy the Constitution.

Section 896 should be read in connection with other sections relating to the method of assessment and especially sections 892 and 895. Section 892 provides that assessment books shall be kept in which shall be entered in detail the assessed valuations of real and personal estate within the limits of the several boroughs of the city of New York; that they shall be open for public inspection, examination and correction from the second Monday in January until the first day of April in each year, and that on the last-mentioned day they shall be closed to enable the board of taxes and assessments to prepare assessment rolls of the several boroughs for delivery to the board of aldermen. Previous to and during the time the books are open for inspection, the board is required to advertise the fact in one newspaper named in the act and in such others as may be authorized by the board of city record.

Section 895 provides that during the time the books are open for public inspection any person claiming to be aggrieved may make a complaint and ask to have the valuation of his property corrected. The commissioners, during the months of April and May, may act upon the complaints made on or before the 31st of March, and may take testimony and make corrections during those months, notwithstanding the provision that the books are to be closed on the first of April. Hence the closing of the books on the first of April is not absolute in all cases, for corrections may be made under certain circumstances at any time during the two months immediately following.

According to the system provided by the charter, as we read it, a valuation is to be made of all property by the second Monday of January, when the books are opened for public inspection, and any person interested may enter a complaint. Such complaint may be investigated and decided before the first of April, in which event the books are closed

on that day as to the property affected. The complaint, how-ever, may be investigated and decided after the first of April and prior to the first of June, in which event the books are not closed on the first of April as to the property covered by the complaint.

The legislature, however, wished to provide for the cor-rection of mistakes in undervaluation as well as overvaluation and accordingly it enacted that the board of taxes and assess-ments might increase the valuation at any time before the first of April in each year. This increase is tentative and subject to correction the same as the original valuation made on or before the first Monday of January. Inasmuch, however, as the taxpayer may examine the books before such increase is made and being satisfied with the valuation go his way with-out making complaint, the legislature provided that the ten-tative increase should not become permanent without a notice of at least ten days. This notice implies the right to make a complaint, for otherwise there would be no object in giving it. The requirement of notice is by necessary implication a requirement that the person notified may be heard. That is the sole object of providing for notice, as otherwise it could do no good and would be an empty form. Accordingly the person deeming himself aggrieved by the tentative increase may appear and make his complaint, which, if made in time, may be passed upon before the first of April, in which event the books are closed on that day as to the property affected. The commissioners, however, are empowered to give notice of the tentative increase after the first of April, provided it is given at least ten days before the fifteenth and in such a case the books are not closed as to the piece of property to which the notice relates. The property owner may appear at any time after the notice and before the fifteenth of April and make his complaint and the tax commissioners have the rest of the month of April and the entire month of May to investigate and consider it. The method of origi-nal valuation and of increasing the valuation are the same in this respect. Both are tentative in the first instance, but

in the former the general notice to the public is sufficient, while in the latter personal notice is required before the valuation becomes fixed. As to the one the time to make a complaint ends on the thirty-first of March, but as to the other the time is extended until the fifteenth of April. In either case the complaint may be investigated and decided at any time before the first of June. As an increase of valuation is in the nature of a reassessment, personal notice of the proposed change is required, so that the owner may be heard before it becomes final. The original assessment is tentative until the property owner has the general notice, and the increased valuation is likewise tentative until he has the special notice provided by law. In either case if he makes no complaint the assessment becomes permanent by lapse of time without further action, but if the valuation is increased after the general notice, the owner is entitled to special notice thereof, and there is an extension of the time to make complaint until the fifteenth of April.

Unless the statute may be thus read it is meaningless, for a notice after the valuation has been permanently increased would be like entering judgment against a defendant first and serving the summons upon him afterward. As every presumption is in favor of a statute, if it is open to two constructions, one of which would obey and the other violate the Constitution, the universal rule of courts is to select the former. No statute should be declared unconstitutional if by any reasonable construction it can be given a meaning in harmony with the fundamental law. When all the provisions of the charter relating to the assessment of property in the city of New York are read together, we think the construction adopted by us is reasonable, and that the construction contended for by the appellant would subvert the meaning and defeat the intention of the legislature.

The order appealed from should be affirmed, with costs.

Cullen, Ch. J., O'Brien, Bartlett, Haight and Werner, JJ., concur; Gray, J., absent.

Order affirmed.