The People of the State of New York ex rel. Bridgeport
Savings Bank, Appellant, v. Thomas L. Feitner et al., as
Commissioners of Taxes and Assessments of the City of New
York, Respondents.

1. Tax — National Bank Stock — Power of Legislature to Pre-
scribe Fixed Rate for Taxation Instead of Ordinary Local Rate.
Under the provision of the United States Revised Statutes (§ 5219) com-
mitting to the legislature of each state the power of directing and deter-
mining the manner and place of taxing all shares of national banking
associations located within its jurisdiction, subject only to the restric-
tions "that the taxation shall not be at a greater rate than is assessed
upon other moneyed capital in the hands of individual citizens of such
state, and that the shares  *  *  *  owned by non-residents  *  *  *  shall
be taxed in the city or town where the bank is located and not elsewhere,"
the state is not obliged to apply the same system to the taxation of
national banks that it uses in the taxation of other property, and, pro-
vided no inequality or unfriendly discrimination is inflicted upon them,
it is within the power of the legislature to substitute a low and flat rate
of taxation, without the privilege of a deduction for debts, in place of the
ordinary rate of taxation applicable to residents of immediate localities
who enjoy such a privilege, especially where, on the average, the former
system is more favorable to the owners of bank shares than the latter.
The fact that the special system may not be as favorable as the general
system in an isolated case does not create a conflict with the Federal Con-
stitution or statute, for a general statute is a rule of action not for a few
but for all the people, and the accident that it may bear more heavily upon
some persons than upon others, owing to their peculiar situation, does not
affect its validity where there is no intentional discrimination against
national banks and no inequality in the effect upon the shareholders
generally.

2. Tax Law — Constitutionality of Provision Relating to Tax-
ation of National Bank Stock — Notice of Assessment and Oppor-
tunity for Hearing.   The provision of section 35 of the Tax Law
(L. 1896, ch. 908) with reference to notice of assessments, that "in
any city the notice shall conform to the requirements of the law
regulating the time, place and manner of revising assessments in such
city," cannot be held to apply to the assessment of bank shares in the
city of New York, where, under the provisions of the charter (L. 1901,
ch. 466, §§ 892, 895), the time prescribed for hearing complaints and
revising assessments expires before the assessment on bank shares can, in
accordance with the provisions of the Tax Law authorizing it, be imposed,
since the scheme of taxing bank shares, not only in respect to the amount,

but also as to the manner and method of its imposition, stands by itself, independent and separate from that prescribed for the assessment and taxation of other property; the charter provisions do not apply, but the assessment must be made, notice given, complaints heard and assessments revised in accordance with the provisions of the General Tax Law. A contention, therefore, that the Tax Law, so far as it relates to the taxation of bank shares in the city of New York, is unconstitutional because the last grievance day would have passed before the assessment on that kind of property could be imposed, thereby depriving the owners of an opportunity to be heard, cannot be upheld, but where it appears that the assessors failed to comply with the law, gave no notice and refused to hear any complaint, the assessment will be set aside for irregularity.

*People ex rel. Bridgeport Sav. Bank* v. *Feitner,* 120 App. Div. 838, reversed.

(Argued January 6, 1908; decided January 31, 1908.)

APPEAL from an order of the Appellate Division of the Supreme Court in the first judicial department, entered July 15, 1907, which affirmed an order of Special Term dismissing a writ of certiorari and confirming an assessment for the purposes of taxation.

The writ of certiorari was procured to review the determination of the respondents in assessing for the purpose of taxation certain shares of stock owned by the relator in one state bank and in ten national banks in the state of New York. The facts as both parties unite in stating them are as follows: "The relator is a Connecticut savings bank and owned on June 1st, 1901, the bank shares enumerated in the petition. It had on that day assets and liabilities of such character and amount that it would have been exempt from any taxation under the laws of New York had it been permitted to deduct its debts in arriving at its taxable surplus, as in the case of an individual taxpayer other than a bank stockholder. The assessment of relator's bank shares was made pursuant to the amendments of sections 23 and 24 of the Tax Law effected by chapter 550 of the Laws of 1901. The procedure was as follows: The chief fiscal officers of these banks reported to the defendants by July 1st, 1901, the condition of their banks, as required by sec-

tion 23 of the Tax Law. In June, 1901, the relator gave notice to the defendants that it claimed to be exempt from assessment on account of its deductible debts and tendered proofs of the fact, but was refused a hearing. At some time prior to October 30th, 1901, the defendants assessed these stocks against the relator at the amounts named in the petition and served written notice thereof upon the respective banks on October 31st, 1901. On November 13th, 1901, the writ herein was issued and served. The general tax rate for 1901 in the Borough of Manhattan where the banks were located, was 2.31733 per cent." The tax on bank shares is fixed by section 24 of the Tax Law at one per centum.

The assessment was confirmed by the court at Special Term and the Appellate Division affirmed the order, two of the justices. dissenting. The relator appealed to this court.

*Charles F. Brown, Silas B. Brownell, John O. Heald* and *John R. Halsey* for appellant. The legislature of the state of New York has no power to tax the shares of the relator in national banks at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of this state. (U. S. R. S. § 5219 ; *Hepburn* v. *School Directors,* 90 U. S. 480 ; *Adams* v. *Nashville,* 95 U. S. 19 ; *Evansville Bank* v. *Britton,* 105 U. S. 322 ; *Boyer* v. *Boyer,* 113 U. S. 689 ; *Mercantile Bank* v. *New York,* 121 U. S. 138 ; *Jenkins* v. *Neff,* 163 N. Y. 320 ; *F. Nat. Bank* v. *Ayers,* 160 U. S. 660.) The laws of this state permit the individual holders of moneyed capital other than bank stocks to deduct all *bona fide* debts from their taxable assets in determining their assessment for taxation thereon. (*People ex rel. C. S. Co.* v. *Dederick,* 161 N. Y. 195.) A statute that allows a deduction of the indebtedness of the individual holders of other moneyed capital and denies that privilege to the owner of national bank shares is in violation of the Federal act. (*People* v. *Weaver,* 100 U. S. 539 ; *Supervisors* v. *Stanley,* 105 U. S. 305 ; *Hills* v. *Exchange Bank,* 105 U. S. 319 ; *Evansville Bank* v. *Britton,* 105 U. S. 322 ; *People ex*

*rel. H. Ins. Co.* v. *Coleman,* 44 Hun, 47.) Under the act of Congress the assessment imposed upon relator's national bank shares must be set aside as illegal. (*Hills* v. *Exchange Bank,* 105 U. S. 321.) An act that provides for the assessment and taxation of property without notice to the owner and an opportunity to be heard is in violation of the Constitution of this state. (Const. of N. Y. art. 1, § 6; *Overing* v. *Foote,* 65 N. Y. 263; *Stuart* v. *Palmer,* 74 N. Y. 183; *Matter of McPherson,* 104 N. Y. 306; *Remsen* v. *Wheeler,* 105 N. Y. 573; *McLaughlin* v. *Miller,* 124 N. Y. 510; *Silkman* v. *Water Commissioners,* 152 N. Y. 327; *Jones* v. *Town of Tonawanda,* 158 N. Y. 438; *Nehasane Park Assn.* v. *Lloyd,* 167 N. Y. 431; *Matter of Douglass* v. *Board of Supervisors,* 172 N. Y. 309; *Hagner* v. *Hall,* 10 App. Div. 581; 159 N. Y. 552; *People ex rel. Schofield* v. *Schoonover,* 47 App. Div. 278.) The Tax Law, as amended in 1901, gave no opportunity to be heard to the owners of bank stocks in the city of New York. (*Dale* v. *City of New York,* 71 App. Div. 229.)

*Francis K. Pendleton, Corporation Counsel (George S. Coleman* of counsel), for respondents. The mere omission to provide by statute for a hearing of the individual shareholders of banks before determining the value of the shares for purposes of taxation did not render the assessments void. (*People ex rel. Keppler* v. *Schwarzmann,* 22 App. Div. 120; 155 N. Y. 661; *Davidson* v. *New Orleans,* 96 U. S. 97; *Hagar* v. *Reclamation Dist.,* 111 U. S. 701; *Williams* v. *Bd. of Suprs.,* 21 Fed. Rep. 99; *Turpin* v. *Lemon,* 187 U. S. 51; *Glidden* v. *Harrington,* 189 U. S. 255; *Corry* v. *Baltimore,* 196 U. S. 466; *Covington* v. *F. Nat. Bank,* 198 U. S. 100; *S. T. S. D. Co.* v. *Lexington,* 203 U. S. 323; *Kentucky R. R. Tax Cases,* 115 U. S. 321.) The provision of the Tax Law that "the owners of the stock of banks and banking associations shall be entitled to no deduction from the taxable value of their shares because of the personal indebtedness of such owners" (§ 24), is not necessarily obnox-

ious to the provision of section 5219 of the Revised Statutes of the United States that the taxation of national bank shares "shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such State." (*People* v. *Weaver*, 100 U. S. 539; *Nat. Bank* v. *Comm.*, 9 Wall. 353; *Boyer* v. *Boyer*, 113 U. S. 689; *M. Bank* v. *New York*, 121 U. S. 138; *F. Nat. Bank* v. *Ayres*, 160 U. S. 660.; *F. Nat. Bank* v. *Chapman*, 173 U. S. 205; *Comcl. Bank* v. *Chambers*, 182 U. S. 556; *Lander* v. *Mercantile Bank*, 186 U. S. 458.)

VANN, J.   No state has power to tax national banks without the consent of Congress, because they are agencies of the Federal government and the power to tax involves the power to destroy. (*Owensboro National Bank* v. *Owensboro,* 173 U. S. 664.) Congress gave its consent many years ago through a statute which commits the subject, including by express mention "the manner and place" of taxing all shares of national banks located within a state to the legislature thereof, "subject only to the two restrictions, that the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state, and that the shares of any national banking association owned by non-residents of any state shall be taxed in the city or town where the bank is located, and not elsewhere." The statute also provides that "nothing herein shall be construed to exempt the real property of associations from either state, county or municipal taxes, to the same extent, according to its value, as other real property is taxed." (U. S. R. S. § 5219.)

The state of New York exercised this power by enacting sections twenty-three and twenty-four of the Tax Law, by which a new and special system of assessment and taxation was created and applied solely to banks, both national and state.   The method or "manner" of assessment rests primarily on a report which the chief fiscal officer of every bank is required to make to the assessors of the tax district where the

1908.] People ex rel. Bridgeport Sav. Bank *v.* Feitner. 93

N. Y. Rep.]        Opinion of the Court, per Vann, J.

bank is located, on or before the first day of July in each year, stating the amount of its authorized capital stock, the number of shares and the par value thereof, the amount of stock paid in, the amount of the surplus and undivided profits, a complete list of the shareholders and the number of shares held by each.   (Tax Law, § 23; L. 1901, ch. 550.)

The rule of assessment and taxation prescribed is that the rate shall be no greater than that imposed upon other moneyed capital in the state, and the rule of valuation is to add together the amount of the capital stock, surplus and undivided profits, and divide the result by the number of shares outstanding. The value of each share is thus ascertained and the rate of tax prescribed is one per centum on such value, with no right to any deduction from the taxable value of the shares on account of the personal indebtedness of the owner thereof.   This tax is in lieu of all other taxes for state, county or local purposes, either on shares or on the personal property of the bank.

The tax is levied by the board of supervisors of the several counties, except the county of New York, on or before the fifteenth day of December in each year by ascertaining through an inspection of the assessment rolls the assessed value of the shares and mailing to the president or cashier of each bank a statement of the amount of its capital stock, surplus and undivided profits, the number of outstanding shares, the value of each share, valued by the assessors according to the rule above prescribed, and the aggregate amount of tax to be paid by such bank.   It is made the duty of each bank to collect the tax due upon its shares from the several owners thereof and to pay the same to the county treasurer, or in the city of New York to the receiver of taxes, within fifteen days after the receipt of such statement.   (Id. § 24.)

The same section provides that " complaints in relation to the assessments of the shares of stock of banks and banking associations made under the provisions of this act shall be heard and determined as provided in article two, section thirty-six of the Tax Law."   The section closes with the pro-viso "that in the city of New York the statement of bank

assessment and tax herein provided for shall be made by the board of tax commissioners of said city, on or before the fifteenth day of December in each year, and by them forthwith mailed to the respective banks and banking associations located in said city, and a certified copy thereof sent to the receiver of taxes of said city. The tax shall be paid by the respective banks in said city to the said receiver of taxes within fifteen days after the receipt of said statement, and said tax shall be collected by the said receiver of taxes and shall be by him paid into the treasury of said city to the credit of the general fund thereof. This act is not to be construed as an exemption of the real estate of banks or banking associations from taxation."

These are the only sections of the Tax Law that apply especially to the assessment of shares of bank stock. Among other sections that are general in their application is section thirty-five, which provides that the assessors shall complete the assessment roll on or before the first day of August and at once give notice where it may be seen and examined by any person until the third Tuesday of August next following and that on that day they will meet at a time and place specified in the notice to review their assessments. It further provides that "in any city the notice shall conform to the requirements of the law regulating the time, place and manner of revising assessments in such city."

Section thirty-six provides that "the assessors shall meet at the time and place specified in such notice, and hear and determine all complaints in relation to such assessments brought before them, and for that purpose they may adjourn from time to time." Provision is made for taking testimony and hearing proofs relating to any complaint and the assessment to which it relates, and finally that "the assessors shall, after said examination, fix the value of the property of the complainant and for that purpose may increase or diminish the assessment thereof."

According to the charter of the city of New York (L 1901, ch. 466) the assessment rolls, containing the "assessed valuations

1908.] People ex rel. Bridgeport Sav. Bank *v.* Feitner. 95

N. Y. Rep.]          Opinion of the Court, per Vann, J.

of real and personal property," are to be completed " on or before the second Monday of January in each year." (§ 899.) The books are open to inspection until the first of April and during said interval complaints may be made and errors corrected. (§§ 892, 895 and 898.) During the months of April and May the commissioners act upon applications, previously made, to diminish the valuation, but their power to make corrections of any kind ceases by the first of June. The clerical work of preparing the revised rolls is finished by the first Monday of July, when the rolls are delivered to the board of aldermen and the commissioners no longer have even the custody thereof. (§ 907.) The tax rolls are completed and delivered to the receiver of taxes on or before the fifteenth of September with the proper warrant annexed for the collection of the taxes, which are due and payable on the first Monday of October, with a reward for paying before the first of November and a penalty for not paying until after the first of December. (§§ 914, 915, 916.)

We have little trouble over the claim of the relator that the assessment upon its shares of stock in national banks is unlawful because no deduction of debts was allowed. No unequal burden was cast on national banks or their stockholders, nor any unjust discrimination made against them by our Tax Law, merely because a different system was adopted in taxing their shares of stock, as well as the shares of stock in state banks, from that applied to other personal property. Congress has expressly committed to the legislature of each state the power of directing and determining the manner and place of taxing all the shares of national banking associations, subject only to the two restrictions named in the section quoted from the Federal act. The rule of valuation prescribed by the state statute is to add the amount of capital stock, surplus and undivided profits together and divide the result by the number of shares outstanding. These data are furnished by the officers of the bank and the application of the rule thereto necessarily leads to the exact value of each share.

The assessment, although based on this valuation, is not made, as in other cases, in accordance with the proportion which such valuation bears to the amount necessary to be raised by government, but upon the basis of a flat rate of one per centum, which, in the case before us, was less than one-half the rate at which other property was taxed. The state is not obliged to apply the same system to the taxation of national banks that it uses in the taxation of other property, provided no injustice, inequality or unfriendly discrimination is inflicted upon them. We find nothing of this character, either in what was done in the case before us or in what might be done in any case under the Tax Law. The flat rate was more favorable to the relator than the general rate in the city of New York and, so far as appears, elsewhere in the state, and while that may not be conclusive, still a different system was open to use by the state and the system adopted is neither unequal nor unfair, at least as to the national banks. If any bank is located in a tax district where the rate is less than one per centum, though we fear there is none so fortunate, its stockholders will be entitled to a reduction to conform thereto, for the Tax Law expressly provides that "in assessing the shares of stock of banks or banking associations organized under the authority of this state or the United States, the assessment and taxation shall not be at a greater rate than is made or assessed upon other monied capital in the hands of individual citizens of this state." (L. 1896, ch. 908, § 24, as amended L. 1901, ch. 550.)

It was within the power of the legislature to weigh advantages and disadvantages and to substitute a low and flat rate of taxation, an advantage which other property does not have, in the place of the deduction of debts, an advantage which other owners of personal property enjoy. If, in order to promote convenience and facilitate collection of taxes on property owned largely by non-residents scattered all over the country, they saw fit to substitute in place of the ordinary rule applicable mainly to residents of the immediate locality, a favorable flat rate with no exemptions for debts, it was in

their power to do so, for on the average the new system is more favorable to the owners of bank shares than the general system.  When all things are considered, the rate, even without the privilege of deducting debts, is not greater than that applied to other moneyed capital in the hands of individual citizens of the state.

The fact that the special system may not be as favorable as the general system in an isolated case does not create a conflict with the Federal Constitution or statute, for a general statute is a rule of action not for a few but for all the people. The accident that it may bear more heavily upon some persons than upon others, owing to their peculiar situation, does not affect its validity, for that is a feature common to most general statutes.  Where there is no intentional discrimination against national banks and no inequality in the effect upon their stockholders generally, the act is valid, and this, we think, is true of those provisions of the Tax Law under consideration.

The relator, however, contends that the tax in question was imposed without notice or any opportunity to be heard, and that the statute contains no provision for either.  If this is true, not only must the tax be set aside but the statute must be adjudged invalid, for it is a principle of our law that there can be no taxation without notice and a chance to complain on account of alleged error or mistake.  The notice need not be personal, as it may be by general statute which is notice to all, but it must afford a reasonable opportunity to make complaint.  It must be of such a character that compliance therewith is possible so that the taxpayer may object or protest, even if he has no just ground for doing either. (*Stuart* v. *Palmer*, 74 N. Y. 190; *Matter of McPherson*, 104 N. Y. 321; *McLaughlin* v. *Miller*, 124 N. Y. 517; *Matter of Douglas* v. *Board of Supervisors Westchester Co.* 172 N. Y. 314; *People ex rel. Moller* v. *O'Donnel*, 183 N. Y. 9, 12.)

A statute, however, will not be adjudged to violate the Constitution if by any reasonable construction it can be given a meaning in harmony with that instrument.  " As every pre-

98    People ex rel. Bridgeport Sav. Bank v. Feitner.    [Jan.,

Opinion of the Court, per Vann, J.        [Vol. 191.

sumption is in favor of the statute, if it is open to two con-
structions, one of which would obey and the other violate the
Constitution, the universal rule of courts is to select the
former." (*People ex rel. Simpson* v. *Wells*, 181 N. Y. 252,
257.)

If the general provisions of the Tax Law relating to a
grievance day apply to the assessment and taxation of bank
shares, it is obvious that there is no cause for complaint so far
as the law itself is concerned, whatever may be said if there
was a failure to comply therewith. It is clear that the Tax
Law assumes to give a hearing to the holders of shares of bank
stock before the assessments upon them become final, for sec-
tion twenty-four expressly provides that " complaints in rela-
tion to the assessments of the shares of stock of banks and
banking associations made under the provisions of this act
shall be heard and determined as provided in article two, sec-
tion thirty-six, of the Tax Law." Upon turning to section
thirty-six, we find that the assessors are required to meet at
the time and place specified in a certain notice and hear and
determine all complaints in relation to such assessments that
are brought before them. For the notice mentioned in this
section we are referred to section thirty-five, which provides
that the assessors shall complete the assessment roll on or
before the first day of August. They are also required to
post notices that the roll has been completed and that a copy
thereof has been left with one of their number at a specified
place, where it may be examined by any person until the third
Tuesday of August next following, and that on that day they
will meet at the time and place named in the notice to
review their assessments. If this were all, no question could
be seriously raised as to the constitutionality of the statute in
the respect now under consideration.

The section, however, further provides that " in any city
the notice shall conform to the requirements of the law regu-
lating the time, place and manner of revising assessments in
such city." Under the charter of the city of New York
ordinary property, both real and personal, but not including

1908.] People ex rel. Bridgeport Sav. Bank *v.* Feitner. 99

N. Y. Rep.]      Opinion of the Court, per Vann, J.

bank shares, is assessed as of the second Monday of January and the time prescribed for hearing complaints and revising the assessments by the assessors expires on the thirty-first of May. (§§ 892, 895, Greater New York charter ; *People ex rel. Simpson* v. *Wells,* 181 N. Y. 252.)   Under these provisions of the charter it is insisted that the Tax Law is unconstitutional so far as it relates to the taxing of bank shares, because the last grievance day would have passed before the assessment on that kind of property could be imposed, since the return from the bank is not required prior to July first.   If these provisions of the charter apply to taxation on bank shares, there can be no answer to this contention, but it seems to us absurd to construe the provisions in section thirty-five concerning notice in cities as applicable to the assessment of bank shares in the city of New York.   Such a construction would impute to the legislature the intention of giving a grievance day in form, but withholding it in fact.   It is not a question of mere constitutionality.   It is an inherent impossibility to review in May an assessment not imposed until after the first of July and this would be equally so even though both State and Federal Constitutions expressly authorized it.   The provision relied upon by the relator in section thirty-five should be construed as applicable only where it is possible to apply it. A review of the various charter provisions of the city of New York and the amendments of sections twenty-three and twenty-four of the Tax Law as made in 1901 in relation to the taxing of bank stock shows that the two schemes are absolutely independent.   The assessment rolls of real and personal property other than bank stock are required by the charter to be delivered to the board of aldermen at the annual meeting on the first Monday of July.   (§ 907.)   On the data required to be furnished by the comptroller of the amount to be raised by taxation, the aldermen proceed to estimate the tax rate to be imposed upon the taxable property of the city and to levy a tax upon each specific piece of property, real or personal. They deliver the tax roll and warrants to the receiver of taxes on or before the fifteenth of September.   The taxes are due

in November, with a rebate made for payment before that time and a penalty added for a failure to pay during that month. The board of aldermen levies no tax on bank stock, but the commissioners of taxes and assessments certify the amount of tax and the persons taxable to the receiver of taxes on or before the fifteenth of September and the taxes thereon become payable during that month.

Thus it is evident that the scheme of taxing bank shares, not only in respect to the amount but also as to the method and manner of its imposition, stands by itself, independent and separate from that prescribed for the assessment and taxation of other property. It follows, therefore, that the charter provisions do not apply to the taxation of bank stock, but the general law as it appears in sections thirty-five and thirty-six. The assessors are required to complete their assessments before the first day of August, to expose the roll as completed for inspection until the third Tuesday in August, to then meet and hear complaints, pass upon them and revise their assessments accordingly. We regard this construction as reasonable and, hence, according to the rule laid down in *People ex rel. Simpson* v. *Wells* (*supra*), we adopt it and hold that the statute is valid.

There is a material difference between a case where the statute imposing the tax fails to provide a grievance day and a case where the taxpayer has been deprived of an opportunity to be heard because the assessing officers failed to give him notice as provided by statute. A taxing act, which requires a valuation of property as part of the procedure, is unconstitutional unless it provides a grievance day, or an adequate opportunity to be heard and any tax levied under such a statute is void. If, however, a grievance day is provided but notice thereof is not given, while the statute is valid, the tax is voidable. The assessors have jurisdiction, but the failure to give notice is an irregularity (*People* v. *Turner*, 145 N. Y. 451), and the assessment, if attacked in due form and in due time, will be set aside, on account of such irregularity. In the case now before us the statute was valid but

the assessing officers failed to comply with it. They gave no notice and refused to hear any complaint, owing doubtless to a misunderstanding of the law. While, therefore, we hold the statute valid, we are compelled, on account of the irregularity in failing to give notice, to reverse the orders of the Appellate Division and of the Special Term and to cancel the assessment against the relator, with costs in all courts.

CULLEN, Ch. J., GRAY, WERNER, WILLARD BARTLETT, HISCOCK and CHASE, JJ., concur.

Ordered accordingly.