PEOPLE ex rel. HANOVER NATIONAL BANK OF THE CITY OF NEW YORK, Relator, *v.* HENRY M. GOLDFOGLE et al., Constituting the Board of Taxes and Assessments of the City of New York, Respondents.

Supreme Court, New York Special Term, February, 1922.

Taxes — national bank stock — " other moneyed capital " taxed by state — no discrimination against bank shares — constitutional law — certiorari — local assessments of national bank stock against individual shareholders confirmed — burden of proof — U. S. Rev. Stat. § 5219 — Tax Law, §§ 4-a, 24-24-g, 290 and 352.

Section 5219 of the Revised Statutes of the United States permits a state to tax national banks, but with the proviso that " the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state."

Section 24 of the Tax Law of the state provides that " in assessing the shares of stock of banks or banking associations organized under the authority of this state or the United States the assessment and taxation shall not be at a greater rate than is made or assessed upon other moneyed capital in the hands of individual citizens of this state."

Though under sections 4-a and 352 of the Tax Law local assessors have no right to assess and tax moneyed capital other than bank shares in the hands of individual citizens of the state, it does not follow that such other moneyed capital is not assessed and taxed by the state.

Local assessors have no power to fix a tax upon other moneyed capital, but so long as the state taxes it in some other way and the tax so imposed is not discriminatory against national banks by reason of inequality, the relevant provisions of the United States Revised Statutes are not violated.

The board of taxes and assessments of the city of New York, under sections 24 to 24-g, both inclusive, of the Tax Law, assessed a tax for the year 1921 upon the shares of stock of the relator, a national bank. The assessments were separately entered in the assessment roll for 1921 against all the shareholders of relator, who owned a total of 30,000 shares, each shareholder being assessed in an amount representing the number of shares held by the shareholder, at a stated valuation. Upon certiorari under section 290 of the Tax Law to review said assessments, the sole claim of relator was that they were illegal and void *in toto*, and should be canceled, *first*, because in view of the

**80** People ex rel. Hanover National Bank *v.* Goldfogle.

Supreme Court, February, 1922. [Vol. 118

exemptions provided for in sections 4-a and 352 of the Tax Law of the state the provisions of the statute under which the assessments were made are repugnant to section 5219 of the Revised Statutes of the United States, and, *second*, because the taxing officer, having exceeded the limitations imposed by section 24 of the Tax Law, acted without jurisdiction. Upon dismissing the proceeding and confirming the assessments, *held*, that it is apparent from a consideration of the various methods adopted by the state in its scheme of taxation embodied in the Tax Law, that other moneyed capital in the hands of individuals is taxed to about the same extent as bank shares, and there is no discrimination against the latter.

The burden of proof that this system of taxation so discriminates against national banks as to place upon them a burden of taxation greater than is imposed upon other moneyed capital, the relator has failed to sustain.

*Merchants National Bank* v. *City of Richmond*, 256 U. S. 635; *Eddy* v. *First National Bank of Fargo*, 275 Fed. Rep. 550, distinguished.

Certiorari to review assessment of tax.

*Morris, Plante & Saxe* (*Martin Saxe, Percy S. Dudley, Charles R. McSparren* and *Curtis A. Peters*, of counsel), for relator.

*John P. O'Brien*, corporation counsel (*William H. King* and *Eugene Fay*, of counsel), for respondents.

Davis, J. This certiorari proceeding was brought September 8, 1921, under section 290 of the Tax Law to review the action of the board of taxes and assessments of the city of New York in assessing a tax for the year 1921 upon the shares of stock of the relator national bank. The attorney-general of the state of New York and the legal representatives of the cities of Oneonta, Rochester and Syracuse have been allowed to appear in the proceeding and file briefs. The assessments in question were made under the provisions of sections 24 to 24-g, inclusive, of the Tax Law of the state of New York, and they were separately entered in the assessment roll for 1921 against the 524 shareholders of the relator bank owning a total of 30,000 shares, each shareholder being assessed in an amount representing the number of shares held by the shareholder at a valuation of $810.51, the assessments so made aggregating $24,315,361.86. The sole claim of relator is that the assessments are illegal and void *in toto*, and should be canceled, *first*, because the provisions of the Tax Law under which defendants made the assessments are repugnant to section 5219 of the Revised Statutes of the United States in view of the exemptions contained in sections 4-a and 352 of the Tax Law of the state, and, *second*, because the defendants exceeded the limitations imposed by section 24 of the Tax Law and thus acted without jurisdiction. Section 5219 of the Revised Statutes of the United States permits a state to tax national banks, but with the proviso that "the taxation shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of such state." And section 24

People ex rel. Hanover National Bank *v.* Goldfogle. **81**

Misc. 79]        Supreme Court, February, 1922.

of the Tax Law of the state provides that " in assessing the shares of stock of banks or banking associations organized under the authority of this state or the United States the assessment and taxation shall not be at a greater rate than is made or assessed upon other moneyed capital in the hands of individual citizens of this state." The relator's claim is that " all intangible personal property, except bank shares, escapes assessment and taxation entirely by reason of the total exemption thereof provided in sections 4-a and 352 of the Tax Law in violation of section 5219 of the Revised Statutes of the United States and section 24 of the Tax Law." Concretely, the relator contends that its shares of stock have been assessed and taxed under a system of taxation which exempts from taxation all moneyed capital except bank shares against the provision of the above sections 5219 and 24. The relator claims that the total exemption of moneyed capital other than bank shares is found in sections 4-a and 352 of the Tax Law, and the question here is whether a total exemption is in fact made by these sections of the Tax Law, thus discriminating against the relator as a national bank. Section 4-a is, " Notwithstanding any provision of this chapter, or of any other general, special or local law, intangible personal property, except shares of stock of banks or banking associations, whether referred to as personal property, capital, capital stock or otherwise, after June 30, 1920, shall be exempt from taxation *locally* for state or local purposes. This exemption shall be in addition to all other exemptions of personal property from local taxation, whether based upon the character, ownership or amount of property. The term ' intangible personal property ' as used in this section means incorporeal property, including money, deposits in banks, shares of stocks, bonds, notes, credits, evidences of an interest in property and evidences of debt." Section 352 of the Tax Law refers to income taxes, and is as follows: " The taxes imposed by this article are in addition to all other taxes imposed by law, except that money on hand or on deposit, with or without interest, bonds, notes and choses in action and shares of stock in corporations other than banks and banking associations, owned by any individual or constituting a part of a trust or estate subject to the income tax imposed by this article, shall not after July thirty-first, nineteen hundred and nineteen, be included in the valuation of the personal property included in the assessment rolls of the several tax districts, villages, school districts and special tax districts of the state." Relator claims that on their face the above-quoted sections exempt from taxation all moneyed capital except bank shares in violation of the provision (§ 5219) that the taxation

Supreme Court, February, 1922. [Vol. 118

of bank shares shall not be at a greater rate than is assessed upon other moneyed capital in the hands of individual citizens of this state. The relator's contention was made clear and definite in its statements of grounds upon which it moved for judgment on the pleadings at the opening of the trial. One ground was that the statute under which the defendants acted is, on its face, contrary to and in violation of section 5219 of the Revised Statutes of the United States, because it subjects national banks to local assessment, while at the same time it makes no provision for the local assessment of any other moneyed capital, but, on the contrary, specifically exempts the same. The relator further stated its claim as follows: "New York State has gone farther than any other state * * * in its desire or in its plan to reach moneyed capital, because it has put all intangible property upon an income tax basis and exempted all intangible property from local taxation except bank shares. And that is why we contend that the discrimination here is shown on the face of the statute." It is true that under sections 4-a and 352 of the Tax Law the local assessors have no right to assess and tax intangible property, except shares of stock of banks and banking associations; that is, they have no right to assess and tax moneyed capital other than bank shares in the hands of individual citizens of the state. But it does not follow that such other moneyed capital is not assessed and taxed by the state. Power is not given to local assessors to fix the tax upon other moneyed capital, but so long as the state taxes that other moneyed capital in some way and the tax so imposed is not discriminatory against national banks by reason of inequality, the provisions of the United States Revised Statutes are not violated. In the case of *People ex rel. Amoskeag Savings Bank* v. *Purdy*, 231 U. S. 373, 392, the court said: "Moreover, we agree with what was said by the Court of Appeals of New York in the *Feitner* case, 191 N. Y. 88, 96,* that ' The State is not obliged to apply the same system to the taxation of national banks that it uses in the taxation of other property, provided no injustice, inequality or unfriendly discrimination is inflicted upon them.' "

Accordingly, we find that the state of New York has established by its Tax Law various methods of taxation designed to reach and tax other moneyed capital in the hands of individual citizens of this state. The meaning of the term " other moneyed capital in the hands of individual citizens of such state," as used in section 5219 of the United States Revised Statutes, is defined in the case of *Mercantile Bank* v. *New York*, 121 U. S. 138, 157: " The terms of the Act of Congress therefore include shares of stock or other

---

* *People ex rel. Bridgeport Sav. Bank* v. *Feitner.*— [Repr.

interests owned by individuals in all enterprises in which the capital employed in carrying on its business is money, where the object of the business is the making of profit by its use as money. The moneyed capital thus employed is invested for that purpose in securities by way of loan, discount, or otherwise, which are, from time to time, according to the rules of business, reduced again to money and reinvested. It includes money in the hands of individuals employed in a similar way, invested in loans, or in securities for the payment of money, either as an investment of a permanent character, or temporarily with a view to sale or repayment and reinvestment. In this way the moneyed capital in the hands of individuals is distinguished from what is known generally as personal property." Moneyed capital, other than national bank stocks, does not escape taxation as claimed by relator. It is taxed under various provisions of the Tax Law of the state. Section 187 imposes an annual tax on insurance corporations of one per cent on the gross amount of premiums received during the preceding year for business done within this state. Section 188 imposes a tax on trust companies of one per cent on the amount of their capital stock, surplus and undivided profits (exactly like the tax on banks). By section 188-a investment companies are required to pay a tax of one and one-half mills on every dollar face value of their capital, and in addition thereto a tax equal to one per cent of their surplus and undivided profits. Under section 189 savings banks pay a tax of one per cent on the par value of their surplus and undivided earnings. Section 191 imposes a tax of five per cent on the amount of interest or compensation of any kind earned and collected by foreign bankers on money loaned, used or employed in the state by such banker. Under article 9-a of the Tax Law all manufacturing and mercantile corporations are taxed annually to the extent of four and one-half per cent of their net income. Banks and other corporations subject to taxation under other provisions of the Tax Law are exempted from the provisions of this article. Under the provisions of section 351 of the Tax Law a tax of from one to three per cent on income is levied upon each resident of the state, and a similar tax is levied upon the income of non-residents derived from property owned within the state and business carried on by such non-residents within the state. A fair consideration of the foregoing provisions of the Tax Law can lead to but one conclusion, that the state has adopted a very comprehensive system of taxation. The relator has the burden of showing that this system discriminates against the national banks, so as to place upon them a burden of taxation greater than is imposed upon other moneyed capital. In my opinion the relator has failed to sustain this burden. It is

quite apparent from a consideration of the various methods adopted by the state in its scheme of taxation that other moneyed capital in the hands of individuals is taxed to about the same extent as bank shares, and that there is no discrimination against the latter. The case of *Merchants National Bank* v. *City of Richmond*, 256 U. S. 635 (decided June 6, 1921), relied upon by the relator, seems to me to be inapplicable to the present case. In that case substantial discrimination against national banks in Virginia in violation of section 5219 of the United States Revised Statutes was obvious upon the face of the taxing law, and the law was held invalid. For instance, as stated by Justice Pitney, it authorized the levying for the year 1915 upon bank stocks, state and national, of a tax for state purposes at the rate of thirty-five cents, and a tax for city purposes at the rate of $1.40, a total of $1.75 upon the $100 of valuation, while upon intangible personal property in general the state rate was sixty-five cents and the city rate thirty cents, an aggregate of ninety-five cents upon each $100 of valuation. Under these rates taxes were imposed upon national bank stocks in the city of Richmond to the value of more than $8,000,000, upon state bank stocks and trust company stocks to the value of $6,000,000, while the lower rate of sixty-five cents was levied upon bonds, notes and other evidences of indebtedness amounting to $6,250,000. And the same can be said of the case of *Eddy* v. *First National Bank of Fargo*, 275 Fed. Rep. 550. The court in the latter case had under consideration statutes of North Dakota which mposed a tax of thirty-five and three-tenths mills per dollar of valuation on national and state bank shares, while taxing all other moneyed capital in the hands of individual citizens of the state at the rate of three mills on the dollar of valuation. It was shown that the result was that the bank's tax amounted to $17,483, while had the three-mill rate been applied, the bank's tax would amount to only $1,482. The discrimination was obviously in violation of section 5219. This proceeding is dismissed and the assessment complained of is confirmed.

Proceeding dismissed. Assessment confirmed.